122 N.J. Super. 387 (1973)
300 A.2d 584
JOHN BORLAND, JR., ET AL., PLAINTIFFS,
v.
BAYONNE HOSPITAL, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 22, 1973.
*389 Messrs. Krieger & Chodash, attorneys for plaintiffs, by Mr. Harold Krieger.
Messrs. Smith, Stratton, Wise & Heher, attorneys for defendant, Bayonne Hospital, by Mr. John R. Heher.
Messrs. Lebson & Prigoff, attorneys for defendant, Englewood Hospital Association, by Mr. John F. Fegelein.
Messrs. Morrison & Griggs, attorneys for defendant, Greater Paterson General Hospital, by Mr. Donald W. de Cordova.
Messrs. Winne & Banta, attorneys for defendant, Hackensack Hospital Association, by Mr. Peter G. Banta.
Messrs. Kein, Pollatschek & Iacopino, attorneys for defendant, Irvington General Hospital, by Mr. Vincent J. Iacopino.
*390 Messrs. Breslin & Breslin, attorneys for the defendant, Holy Name Hospital, by Mr. Charles Rodgers.
Messrs. Riker, Danzig, Scherer & Brown, attorneys for defendants, The Hospital Center at Orange and Saint Barnabas Medical Center, by Mr. Dickinson R. DeBevoise.
Messrs. Schenck, Price, Smith & King, attorneys for defendant, Morristown Memorial Hospital, by Mr. Clifford W. Starrett.
Messrs. Booth, Bate, Hagoort, Keith & Harris, attorneys for defendant, The Mountainside Hospital, by Mr. David S. Bate.
Messrs. Lowenstein, Sandler, Brochin, Kohl & Fisher, attorneys for defendant, Newark Beth Israel Medical Center, by Mr. Bruce D. Shoulson.
Messrs. Clapp & Eisenberg, attorneys for defendant, Riverdell Hospital, by Mr. Stuart L. Pachman.
Messrs. McCann & McCann, attorneys for defendant, Saddle Brook Hospital, by Mr. Edmund V. McCann.
Messrs. Milton, Keane & Brady, attorneys for defendants, St. Michael's Medical Center and St. Mary's Hospital of Hoboken, by Mr. William F. Tuohey.
Messrs. Johnson, Johnson & Murphy, attorneys for defendant, St. Joseph's Hospital, by Mr. William F. Johnson, Jr.
Messrs. Mandak, Roth & Ferrante, attorneys for defendant, St. Mary's Hospital of Passaic, by Mr. Frank A. Ferrante.
*391 Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney for defendants, Commissioner of Insurance and Commissioner of Health, by Mr. Mark L. First, Deputy Attorney General.
Messrs. Pitney, Hardin & Kipp, attorneys for defendant, Hospital Service Plan of New Jersey, by Mr. Clyde A. Szuch.
Mr. Herbert Alterman, attorney for defendant, Beth Israel Hospital.
Mr. Michael J. Ferrara, attorney for defendant, Bergen Pines County Hospital.
Messrs. Smith, Kramer & Morrison, attorneys for defendant, Clara Maas Memorial Hospital.
Messrs. Giordano, Giordano & Halleran, attorneys for defendant, Monmouth Medical Center.
Messrs. Wilentz, Goldman, & Spitzer, attorneys for defendant South Amboy Memorial Hospital.
FINK, J.S.C.
Plaintiffs, Trustees of the Welfare Fund of Local 464, Amalgamated Meat Cutters and Food Store Employees Union, AFL-CIO (hereinafter "union"), and Howard Marks, a union member and eligible beneficiary of the union welfare plan, have instituted the within action against 22 New Jersey hospitals, the Hospital Service Plan of New Jersey (herein impleaded as "The Blue Cross-Blue Shield Plan of New Jersey"), the New Jersey Commissioner of Insurance and the New Jersey Commissioner of Health.
The suit is filed as a class action on behalf of labor union welfare funds in the state providing medical service benefits not funded through Blue Cross and members of labor unions providing such plans. Plaintiffs seek injunctive relief and damages for alleged discrimination by defendant hospitals *392 in charging plaintiffs higher rates for hospital services than are charged to Blue Cross subscribers for identical service.
The complaint asserts that the differential in rates is illegal and improper in that:
1. It deprives plaintiffs of due process under Article I, paragraph 1 of the 1947 New Jersey Constitution;
2. It deprives plaintiffs of equal protection of the laws under the United States and State Constitutions;
3. It constitutes an infringement of the right to bargain collectively, contrary to Article I, paragraph XIX of the State Constitution;
4. It is the end result of a conspiracy between the hospitals and Blue Cross in furtherance of a common plan and mutual scheme in violation of the New Jersey Anti-Trust Act (N.J.S.A. 56:9-1 et seq.)
Defendant hospitals moved to dismiss the complaint as it applies to them on the ground that the complaint fails to state a cause of action against them. This motion, under R. 4:6-2, will be treated as a motion for summary judgment.
Defendant Hospital Service Plan of New Jersey (hereinafter "Blue Cross" moved for summary judgment on the ground that there exists no genuine issue as to any material fact and that Blue Cross is entitled to a judgment in its favor as a matter of law.
The Commissioner of Insurance and the Commissioner of Health have filed an answer but do not join in these motions.
The right to proceed with this litigation as a class action under R. 4:32-1 has not yet been established. The parties have stipulated that the proceedings necessary to establish this litigation as a class action should be held in abeyance until the determination of the pending motions.
The threshold question is whether the matter is ripe for summary judgment as between plaintiffs, the hospitals and the Hospital Plan of New Jersey.
*393 For the reasons that follow, it is my judgment that the issues involved are legal in nature only.
All of the parties admit that there is such a differential  that is, plaintiffs, commercial insurance companies, individuals, labor unions and all others, pay for hospital services at higher rates than are prescribed by the Commissioner of Insurance and the Commissioner of Health for reimbursement for services rendered Blue Cross subscribers. At this point it must be noted that federal agencies under the Medicare program also pay less by reason of applicable statutory law. N.J.S.A. 26:2H-18(b); 42 U.S.C.A., § 1395f(b); 20 CFR, § 405.401(a).
Plaintiffs assert that there are fact issues that preclude disposition of the case as to the hospitals and Blue Cross on a summary judgment basis. In their brief they state:
The unknown factual questions which necessitate and warrant discovery stem from the first negotiations between N.J. Hospitals and Blue Cross, whereby a formula is determined and agreed upon between the parties, which is then used to calculate the per diem rate to be charged Blue Cross subscribers after approval by the Commissioners of Insurance and Health. The secrecy of these negotiations, and the defendants refusal to stipulate as to these matters has created a factual question which must be exposed by discovery. This factual question is: what specific cost and expense items are excluded or included from the total costs (as required by NJRS. 26:2H-4) in arriving at the formula which is used as basis for calculation of the per diem rate charged Blue Cross subscribers, and as a result thereof, fixes the discriminatory rate charged non-Blue Cross subscribers.
Plaintiffs' contention overlooks the fact, however, that neither Blue Cross nor the hospitals control how much Blue Cross reimburses the hospitals for services rendered to Blue Cross subscribers. That function is vested in the Commissioner of Insurance of the State of New Jersey with the approval of the Commissioner of Health of the State of New Jersey by virtue of the Health Care Facilities Planning Act, N.J.S.A. 26:2H-18(d). On the other hand, the power and duty to determine charges made to the general public remain *394 vested in the governing bodies of defendant hospitals. The rate-making process under the above act requires the rate of payment by Blue Cross to participating hospitals to be approved annually. The actual procedure is that in October or November of the preceding year each hospital prepares and submits its proposed operating budget for the coming calendar year to the Budget and Advisory Committee appointed by the Commissioner of Insurance. The Advisory Committee consists of three physicians, five hospital administrators, and four hospital trustees. The Committee is assisted in its review by the Budget Review Staff, a division of the Hospital Research and Educational Trust of New Jersey. The Health Care Facilities Planning Act requires the Commissioner of Health, in consultation with the Commissioner of Insurance, to determine and certify the costs of providing health care services based on reports prepared by the hospitals in accordance with a uniform system of cost accounting. N.J.S.A. 26:2H-18(c).
The Committee recommends to the Commissioner for his approval a tentative per diem reimbursement rate for the operating year for admissions to each hospital.
It is conceded by the hospitals and Blue Cross that in computing reimbursement rates by Blue Cross the Commissioners of Insurance and Health omit from consideration some of the costs necessary to the operation of hospitals (e.g., the cost of providing indigent care). As a result the rates hospitals charge others, including plaintiffs, is computed to permit the hospitals to recapture their omitted costs. The difference in rates is said to approximate 20%.
Thus, the alleged questions of fact are not questions of fact at all. The hospitals and Blue Cross concede that the reimbursement rate paid by Blue Cross for services rendered to subscribers is less than the rates paid by plaintiffs and others, and they also concede the method by which those different rates are established. Their response, however, is that they do not control the ultimate reimbursement rate paid by Blue Cross; that this is the sole function of the Commissioners *395 of Insurance and Health, and that plaintiffs' complaints against them are misdirected.
In the face of the admission by the hospitals and Blue Cross that some items of cost are omitted by the Commissioners of Insurance and Health in calculating the reimbursement rate, I see no necessity for a plenary hearing to determine the precise item or items of cost that are omitted from consideration by the Commissioners of Insurance and Health. That may become necessary in the remaining part of the action against the Commissioners of Insurance and Health. N.J.S.A. 26:2H-18(d) provides that in establishing such rates the Commissioners shall take into consideration the total costs of the hospitals. In actual practice, the form on which each hospital must submit its budget is provided by the Commissioner of Health. Such forms exclude certain items of nonreimbursible costs based on policy decisions made by the Commissioners of Health and Insurance, and this generally accounts for the difference between the reimbursement rates paid by Blue Cross and the hospital-established rates to non-hospital service corporations. Whether such omissions are in violation of the provisions of N.J.S.A. 26:2H-18(d) is, however, not an issue as between plaintiffs and the hospitals and Blue Cross. In fact, it is an issue which the hospitals themselves, in their brief, have reserved the right to raise at an appropriate time and in an appropriate proceeding. Insofar as the present litigation is concerned, the omission of costs is an issue as between plaintiffs and the Commissioners of Health and Insurance.
Based upon the assumption that under the Health Care Facilities Act, N.J.S.A. 26:2H-1 et seq., reimbursement rates to Blue Cross for services to its subscribers may be at a rate which is less than that charged to others, the hospitals and Blue Cross take the position that that is constitutionally permissible. Plaintiffs take the position that this is constitutionally impermissible. It is that issue, among others, that will occupy the attention of this Court in this opinion.
*396 As to the allegations levelled by plaintiffs at the hospitals and Blue Cross involving "secret negotiations," "mutual schemes" and "conspiracy" to fix the rates Blue Cross pays, they are just that, namely, bare allegations. There is not a single pleaded fact to support them. In my opinion they are spurious and warrant no consideration.

The constitutional issues arising under the Due Process Clause of the New Jersey Constitution and the Equal Protection Clause of the Federal Constitution.
Plaintiffs allege a violation of their rights to due process under Article I, paragraph 1 of the 1947 New Jersey Constitution, and to equal protection under Section 1 of the Fourteenth Amendment of the United States Constitution.
While the due process and equal protection guaranties are not coterminous in their spheres of protection, equality of right is fundamental in both. Each forbids class legislation arbitrarily discriminatory against some and favoring others in like circumstances. [Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949)]
Discrimination and inequality of rights are plaintiffs' sole complaints. Since those complaints invoke the same principles involving due process under the State Constitution, and equal protection under the Federal Constitution, they will be discussed under one heading.
Specifically, plaintiffs allege that the hospitals and Blue Cross illegally discriminate against them in violation of their constitutional rights in that the hospitals charge Blue Cross less for services rendered its subscribers than is charged to plaintiffs for identical services rendered to its members.
In challenging the rates paid by Blue Cross plaintiffs are in effect challenging the constitutionality of the Hospital Service Corporation Act.
Not every inequality offends the constitutional provision of due process and equal protection. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78-79, 31 S.Ct. 337, 55 *397 L.Ed. 369 (1911); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). See also, David v. Vesta Co., 45 N.J. 301, 315 (1965).
The requirement of equal protection is satisfied if all persons within a class, reasonable selected, are treated alike. And a classification is reasonable if it rests upon some grounds of difference having a real and substantial relation to the basic object of the particular enactment or on some relevant consideration of public policy. If there is a reasonable distinction, there is no oppressive discrimination. The Legislature has a wide range of discretion in this area and distinctions will be presumed to rest upon a rational basis if there be any conceivable state of facts which would afford reasonable support for them. Robson v. Rodriquez, 26 N.J. 517 (1958); Wilson v. Long Branch, 27 N.J. 360 (1958).
Hence, in assailing the statutory scheme which compels the present difference in rates on the grounds that it violates the equal protection and due process clauses of the Fourteenth Amendment, plaintiffs must carry the burden of showing that the classification which results in favorable benefits to hospital service corporations such as Blue Cross does not bear a reasonable relation to a permissible legislative objective. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S.Ct. 578, 81 L.Ed. 703 (1937), and is essentially arbitrary, Goldblatt v. Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78-79, 31 S.Ct. 337 (1911); Independent Elec. & Elec. Contractors' Ass'n of N.J. v. N.J. Bd. of Exam. of Elec. Cont., 54 N.J. 466, 473 (1969); David v. Vesta Co., 45 N.J. 301, 314-315 (1965). If any state of facts reasonably may be conceived to justify the distinction, the statute will be upheld. Dandridge v. Williams, 397 U.S. 471, 486-487, 90 S.Ct. 1153 (1970); Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070 (1935).
The State has unquestioned power to legislate in the area of public health. Williamson v. Lee Optical of Oklahoma, *398 Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). This is especially so regarding the modern hospital system which is operated for the benefit of the public. See Griesman v. Newcomb Hospital, 40 N.J. 389, 396, 192 A.2d 817 (1963). Equally clear is the fact that, at least in the field of insurance, "the power of the state is broad enough to take over the whole business, leaving no part for private enterprise." California State Auto. Ass'n Inter-Ins. Bureau v. Maloney, 341 U.S. 105, 110, 71 S.Ct. 601, 604, 95 L.Ed. 788 (1951); Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1940). Not only may the State completely preempt the field of health insurance, but it may affirmatively require the purchase of insurance or its equivalent. New York Central R. Co. v. White, 243 U.S. 188, 208-209, 37 S.Ct. 247, 61 L.Ed. 667 (1917) (workmen's compensation). Alternatively, the State may enact compulsory health insurance supported by employer contributions or by taxes. See generally, Falk, "National Health Insurance; A Review of Policies and Proposals," 37 L. & Contemp. Prob. 669 (1970); Falk, "Beyond Medicare," 59 Am. J. Pub. Health 608 (1969). Cf. Mountain Timber Co. v. Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685 (1917) (contribution to state fund for workmen's compensation).
In New Jersey, rather than preempt the health insurance field entirely, cf. Independent Service Corp. v. Tousant, 56 F. Supp. 75 (D. Mass. 1944), aff'd 149 F.2d 204 (1 Cir.1945), the Legislature has chosen to enact the Hospital Service Corporation Act (N.J.S.A. 17:48-1 et seq.) which is designed particularly to accomplish the purpose of a broad-based community health program, i.e., to satisfy the needs of the hospitals and the community as a whole through a partnership between hospitals and a non profit prepayment plan. See Associated Hospital Service, Inc. v. Milwaukee, 13 Wis.2d 447, 109 N.W.2d 271 (Sup. Ct. 1961); cf. Johnson v. Hospital Service Plan of N.J., 25 N.J. 134 (1957). See generally, Report of Special Counsel to the Commissioner of Banking and Insurance of the *399 State of New Jersey for the Public Interest, 30-32 (1970) (Wharton Report); Final Report of the Special Commission appointed by the Governor to Study Blue Cross in New Jersey (1967) (Ward Report); Final Report of the New Jersey Blue Cross Rate Study Commission, 28-30 (1960) (Simon Report) ("The basic philosophy of Blue Cross has always been that of constant progress toward the goal of complete protection against the unpredictable costs of hospital services for all the people of the community.") The goals and objectives of this partnership are: (a) to provide to the public a payment-in-advance method for financing care provided by hospitals and to guarantee payment to the hospitals; (b) to make hospital care needed by the public financially accessible to the largest number of people at the lowest possible cost, and (c) to help the community carry the social and economic burden created when people are unable to pay for the necessary care rendered by hospitals. See generally, Wharton Report 30-32 (1970). Cf. Johnson v. Hospital Service Plan of N.J., 25 N.J. 134, 144 (1957).
The relationship of the Legislative program to these goals is readily apparent from the statutory provisions of the Hospital Service Corporation Act and companion legislation. So, for example, in order to maintain low cost to the public, the statute requires that a hospital service corporation be organized without capital stock and not for profit (N.J.S.A. 17:48-1); that it be operated only for the benefit of its subscribers (N.J.S.A. 17:48-2); that it be strictly limited as to expenditures for solicitation and administration (N.J.S.A. 17:48-10); that its reserves be kept low in contrast to commercial carriers (compare N.J.S.A. 17:48-10 with N.J.S.A. 17B:19-5); that its investments be strictly limited (N.J.S.A. 17:48-10), and that it be exempt from most taxes (N.J.S.A. 17:48-18).
When the Hospital Service Corporation Act is read together with the recently enacted Health Care Facilities Planning Act, there emerges an integrated program combining Blue Cross with the entire apparatus for the control of hospital *400 costs under the Commissioners of Health and Insurance. Section 1 of the new act states:
It is hereby declared to be the public policy of the State that hospital and related health care services of the highest quality, of demonstrated need, efficiently provided and properly utilized at a reasonable cost are of vital concern to the public health. [N.J.S.A. 26:2H-1]
It is under this act that the commissioners of Health and Insurance are given power to determine a "reasonable" rate of reimbursement for the hospitals (N.J.S.A. 26:2H-18).
In contrast to the statutorily created tripartite program involving the Commissioners of Insurance and Health, Blue Cross and the hospitals, commercial health insurance carriers operate for profit and charge whatever premiums and pay whatever benefits they choose subject only to the requirement that benefits to individual subscribers are not unreasonable in relation to the premium charged (N.J.S.A. 17B:26-1(h) 1). Moreover, a commercial carrier has great freedom to experience rate its group customers, and unlike a hospital service corporation it is not limited in its right to terminate coverage.
Plaintiff trustees do not constitute either a hospital service corporation or an insurance company. Hence, they are not subject to the strict regulatory statutory controls imposed on hospital service corporations or even to the looser regulations governing insurance companies. They provide benefits to members subject only to general fiduciary principles. Most importantly, the goals and objectives of plaintiff trustees are not to provide prepayment of hospital care for the community at large or to help the community carry the social and economic burden of such care. Nor is it their function to guarantee payment or insure its prompt receipt by the hospitals. See Johnson v. Hospital Service Plan of N.J. 25 N.J. 134 (1957).
In Associated Hospital Service, Inc. v. Milwaukee, 13 Wis. 2d 447, 109 N.W.2d 271, 88 A.L.R.2d 1395 (1961), the *401 Wisconsin Supreme Court considered whether the tax exemption granted the Blue Cross plan resulted in an unreasonable classification violative of the equal protection clause of the Fourteenth Amendment. In particular, the City of Milwaukee argued that an arbitrary and unconstitutional classification is made by the statute in granting exemption to the property of Blue Cross and not that of insurance companies. The court, after discussing the history and background of Blue Cross and the purposes and objectives to which it is dedicated, noted the "marked difference in method of operation between a Blue Cross hospital service corporation and a commercial insurance company that sells hospital care indemnity insurance." 13 Wis.2d at 471, 109 N.W.2d at 283, 88 A.L.R.2d at 1411. The court said:
The state's interest in protecting the financial status of its state, county, municipal, and voluntary non-profit hospitals is a further justification for treating Blue Cross hospital service corporations differently tax wise than it does commercial insurance companies writing hospital care indemnity insurance. [13 Wis.2d 471, 109 N.W.2d 283, 88 A.L.R.2d at 1412]
The court concluded:
Enough has been said to indicate that the classification made by [the statute] does rest upon real differences existing between non-profit hospital service corporations and commercial insurance companies writing hospital care indemnity insurance. Therefore, such statute does not impose an arbitrary unreasonable classification and is constitutional. [Id]
For purposes of this motion it may be assumed arguendo that plaintiff trustees, in attempting to provide a health service benefits program to members of the union, are at a competitive disadvantage vis a vis Blue Cross to the extent that the latter pays less per patient than plaintiff trustees. However, given the public and quasi-public nature of the entire hospital service corporation system  especially the Blue Cross-member hospital relationship as controlled and regulated by the Commissioners of Health and Insurance  it is apparent that the trustees are complaining of an unequal *402 competitive environment created by and maintained by the State. No constitutional doctrine requires that the State permit free competition or eschew competing with private concerns, especially in an area of such public concern as health financing for the community. Cf. Tennessee Electric Power Co. v. T.V.A., 306 U.S. 118, 138-140, 59 S.Ct. 366, 83 L.Ed. 543 (1939) (private utility complains of T.V.A. competition and T.V.A.'s ability to offer lower rates); Madera Water Works v. Madera, 228 U.S. 454, 33 S.Ct. 571, 57 L.Ed. 915 (1913); Helena Water Works Co. v. Helena, 195 U.S. 383, 388, 25 S.Ct. 40, 49 L.Ed. 245 (1904); Joplin v. Southwest Missouri Light Co., 191 U.S. 150, 24 S.Ct. 43, 48 L.Ed. 127 (1903). Cf. Hardin v. Kentucky Utility Co., 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968) (T.V.A. competition). Indeed, the Government can compete even though such competition destroys its competitors. Missouri Utilities Co. v. California, 8 F. Supp. 454, 465 (W.D. Mo. 1934), app. dism. 79 F.2d 1003 (8 Cir.1935).
Notwithstanding its power to do so, in creating hospital service corporations and in regulating their reimbursement of hospitals, the State of New Jersey has not sought to forbid or destroy competition among other organizations wishing to provide health insurance or health service benefits. Neither has the State required all persons to purchase Blue Cross insurance or forbidden others to act as third-party payors. Rather, the statute creating the Blue Cross program provides certain benefits to and imposes certain burdens on Blue Cross so as to enable it to accomplish its statutory purposes. The fact that in so doing plaintiff trustees' welfare plan has been put at a competitive disadvantage does no violence to the Constitution. Cf. Independent Service Corp. v. Tousant, 56 F. Supp. 75 (D. Mass. 1944), aff'd 149 F.2d 204 (1 Cir.1945). See also Virgo Corp. v. Paiewonsky, 384 F.2d 569 (3 Cir.1967), cert. den. 390 U.S. 1041, 88 S.Ct. 1633, 20 L.Ed.2d 303 (1968) (one of four competitors may *403 be denied subsidies granted to others where, in view of public purpose of subsidy program, classification was not "patently arbitrary").

The constitutional issue arising under Article I, paragraph 19 of the New Jersey Constitution which guarantees the rights of employees to organize and bargain collectively.
The pertinent part of the constitutional provision referred to above states:
Persons in private employment shall have the right to organize and bargain collectively.
Plaintiffs assert that their right to organize and bargain collectively has been infringed upon, but how it has been infringed upon by the hospitals and Blue Cross is not explained. In my judgment the constitutional guarantee of the right of persons in private employment to organize and bargain collectively has no application to the dispute between the parties in this case. The relationship of employer and employee does not exist between the hospitals, Blue Cross and plaintiffs. The gravamen of a right to collective bargaining rests upon an employee-employer relationship. Compare Johnson v. Christ Hospital, 84 N.J. Super. 541 (Ch. Div. 1964), aff'd 45 N.J. 108 (1965).
Neither the industry of counsel nor of this court has turned up a case in New Jersey or in federal law whereby a third party not involved in labor negotiations has been held bound by the provisions of Article I, paragraph 19 of the 1947 New Jersey Constitution.

The New Jersey Anti-Trust Act, N.J.S.A. 56:9-1 et seq. has no application in this case.
*404 Section 3 of the above act provides:
Every contract, combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce in this State shall be unlawful.
Plaintiffs assert:
The defendant hospitals have conspired with the officers, employees and directors of Blue Cross in furtherance of a common plan and a mutual scheme in violation of the New Jersey Anti-Trust Act in charging the plaintiffs and members of all other welfare unions similarly situated more than subscribers of defendant Blue Cross are required to pay for the same equipment, facilities and services, thereby depriving plaintiff and members of their class of their property by reason of such acts, conspiracy, common plan, mutual scheme and monopolization in violation of the provisions of the New Jersey Anti-Trust Law.
The New Jersey Anti-Trust Act, N.J.S.A. 56:9-12, also provides:
(a). Any person who shall be injured in his business or property by reason of a violation of the provisions of this act may sue therefor and shall recover threefold the damages sustained by him, together with reasonable attorneys' fees, filing fees and reasonable costs of suit. Reasonable costs of suit may include, but shall not be limited to the expenses of discovery and document reproduction.
Based upon the authority of the above section, plaintiffs for themselves and for each member of the contemplated class seek treble damages together with reasonable attorneys' fees, filing fees and reasonable costs of suit.
In my judgment, the New Jersey Anti-Trust Act has no application in this controversy for the following reasons:
(1) I have heretofore pointed out that plaintiffs allege no facts to support their contention that defendant hospitals have conspired with the officers, members and directors of Blue Cross in furtherance of a common plan, a mutual scheme and monopolization in violation of the New Jersey Anti-Trust Act. Plaintiffs charge conspiracy but tacitly admit that the charge is based upon no known facts. In *405 plaintiffs' brief, reference is made to "the unknown factual questions" which necessitate and warrant discovery and stem from the first negotiations between New Jersey hospitals and Blue Cross whereby a formula is determined and agreed upon between the parties which is then used to calculate the per diem rate to be charged Blue Cross subscribers after approval by the Commissioners of Insurance and Health.
Even assuming, as plaintiffs charge, that a formula is determined and agreed upon between the parties which is then used to calculate the per diem rate to be charged Blue Cross subscribers after approval by the Commissioners of Insurance and Health, it is not conceivable how those negotiations and the resultant formulas in which the State of New Jersey, through the Commissioner of Insurance and the Commissioner of Health participates, constitute a violation of the New Jersey Anti-Trust Act
(2) The Anti-Trust Act provides that:
Charitable Exemption: No provisions of this Act shall be construed to make illegal:

* * * * *
(5) The bona fide religious and charitable activities of any not for profit corporation * * * established exclusively for religious or charitable purposes, or for both purposes. [N.J.S.A. 56:9-5(b)]
All but one of defendant hospitals come within this class of organization.
Plaintiffs' brief offers no reason or authority to support its bare statement that defendant hospitals should be denied the exemption for which the statute specifically provides.
(3) Insurance Exemption. Blue Cross and the rate of Blue Cross reimbursement to hospitals are subject to detailed regulation by the Commissioner of Insurance. As such, the establishment of the payment rates to which plaintiffs object is exempt from New Jersey's Anti-Trust Act, which provides
*406 No provisions of this act shall be construed to make illegal:

* * * * *
(4) The activities * * * of any insurer * * * to the extent that such activities are subject to regulation by the Commissioner of Insurance of this State under, or are permitted, or are authorized by, the Department of Banking and Insurance Act of 1948 (C. 17:1-1 et seq.) and the Department of Insurance Act of 1970 (C. 17:1C-1 et seq.) [N.J.S.A. 56:9-5(b)(4)]
Plaintiffs argue that Blue Cross is not an "insurer" within the meaning of this exemption, citing cases which define "insurer" in contexts outside of the anti-trust field and which, therefore, are not pertinent.
The determination of whether Blue Cross is an insurer within the meaning of the Anti-Trust Act exemption must be determined in light of the purpose of the exemption. Clearly the exemption is designed to avoid the situation whereby a state regulatory agency acting pursuant to one statute (the insurance laws) requires conduct which might be held to violate another statute (the Anti-Trust Act).
With the purpose of the anti-trust exemption language in mind, the cases follow a consistent pattern. In that context, Blue Cross organizations regulated by a Commissioner of Insurance are deemed to be insurers and exempt from anti-trust provisions.
To hold otherwise would be contrary to established principles of statutory construction, for then acts which the Commissioner is authorized and directed to perform under N.J.S.A. 17:48-1 et seq., regulating hospital service corporations, would be prohibited by N.J.S.A. 56:9-1 et seq. A statute is not to be construed in such a way that it will render other legislative acts vain or impotent. State v. McCall, 14 N.J. 538 (1954); Loftus v. Public Service Interstate Transp. Co., 26 N.J. Misc. 246, 59 A.2d 652 (Sup. Ct. 1948).
Even without a specific exemption for insurers the Wisconsin Supreme Court held that Wisconsin Blue Cross, which received a discount from contracting hospitals, did not violate the state anti-trust laws. The court reasoned that the *407 federal "rule of reason" test should be used in construing the Wisconsin Anti-Trust Law because it had previously been held that the state law was a reenactment of the Sherman Act for intrastate transactions. Applying the rule of reason test, the court held that to violate the state anti-trust law the alleged restraint on trade must be unreasonable, and the restraint in this case was not unreasonable because it was authorized by state laws which clearly fulfilled the legislative intent behind their enactment. Reese v. Associated Hospital Service, Inc., 45 Wis.2d 526, 173 N.W.2d 661 (Sup. Ct. 1970).
The application of the McCarren Act, 15 U.S.C.A., §§ 1011-1015, to hospital service corporations compels the conclusion that such a corporation is an "insurer" for the purpose of exemption provisions of anti-trust laws and that contracts establishing hospital reimbursement rates are entered into in the course of an insurer's business.
The McCarren Act provides that the business of insurance and the persons engaged therein shall be subject to the laws of the several states which regulate such business and that the federal anti-trust laws shall be applicable to the business of insurance only to the extent that such business is not regulated by state law (except that the Sherman Act shall continue to apply to boycotts, coercion and intimidation).
In Traveler's Insurance Co. v. Blue Cross of Western Pa., CCH Trade Reg. Rep. par. 73, 811 (W.D. Penna. 1972), plaintiff insurance company sued Blue Cross under the federal anti-trust laws. The facts were very similar to those in the present case. The hospitals under contract with Blue Cross charged plaintiff and other commercial carriers an average of 14% more for their services than they accepted as full payment from Blue Cross. The activities of Blue Cross, including the contracts for reimbursement, were regulated by the Pennsylvania Insurance Department pursuant to statute.
Blue Cross claimed that it was in the business of insurance and therefore exempt from the federal anti-trust laws by *408 virtue of the McCarren Act. Agreeing with this position, the court stated:
* * * The Blue Cross hospital contract is, therefore, an integral part of Pennsylvania's regulated hospital plan. By reason of the interrelationship of hospital payments and Blue Cross subscriber rates the contract also falls within the ambit of "insurance business."
Further, Blue Cross denied that it had engaged in any acts which constituted monopolization or restraint of trade within the meaning of the Sherman Act. As in the present case, the heart of plaintiff's case was the "discriminatory price advantage emanating from Blue Cross' contract with hospitals." The court held not only that Blue Cross was exempt from the anti-trust act by virtue of the McCarren Act, it also held that in any event there was no restraint of trade or monopolization in violation of the Sherman Anti-Trust Act.
Motion for summary judgment in favor of defendant hospitals and the Hospital Service Plan of New Jersey (Blue Cross) is granted.