704 A.2d 1316

IRA D. SHAPIRO, D.C., JOHN ALLEN, D.C. AND NEW JERSEY CHIROPRACTIC SOCIETY, PLAINTIFFS–APPELLANTS, v. MIDDLESEX COUNTY MUNICIPAL JOINT INSURANCE FUND; WILLIAM KURTZ; INDIVIDUALS WHO ARE COMMISSIONERS AND DIRECTORS OF THE MIDDLESEX COUNTY JOINT INSURANCE FUND; OLD BRIDGE/SAYREVILLE MEDICAL GROUP; INDIVIDUALS WHO ARE SHAREHOLDERS, DIRECTORS AND OFFICERS OF THE OLD BRIDGE/SAYREVILLE MEDICAL GROUP; SCIBAL ASSOCIATES; CLAIMS SOLUTIONS; ALLEN F. CRANE AND TERRENCE G. BLACKWELL, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted December 8, 1997—Decided January 20, 1998.

454

Before Judges HAVEY, LANDAU and NEWMAN.

*Michael A. Toto*, attorney for appellants.

*Wilentz, Goldman & Spitzer*, attorneys for respondents Middlesex County Municipal Joint Insurance Fund; William Kurtz; Individuals who are Commissioners and Directors of the Middlesex County Joint Insurance Fund; Old Bridge/Sayreville Medical Group; Individuals who are Shareholders, Directors and Officers of the Old Bridge/Sayreville Medical Group; Scibal Associates; and Claims Solutions (*Roger B. Kaplan*, of counsel and *Donald E. Taylor*, on the brief).

*Lynch, Martin, Philibosian, Chansky, Fitzgerald & Kane*, attorneys for respondents Allen F. Crane and Terrence G. Blackwell (*Lori A. Dvorak*, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Plaintiffs Ira A. Shapiro, D.C., (Shapiro), John Allen, D.C., (Allen), and New Jersey Chiropractic Society (Society), appeal from an October 28, 1996 Chancery Division order, and the November 22, 1996 denial of its reconsideration, dismissing their complaint for failure to state a claim, *R.* 4:6–2(e), and simultaneously denying standing to the Society. The complaint alleged a number of antitrust claims under the New Jersey Antitrust Act (*N.J.S.A.* 56:9–1 to –19), as well as claims for tortious interference with contractual and business relations. It was removed from the Federal District Court to the Chancery Division.

Plaintiffs Shapiro and Allen are practicing chiropractors in the Township of Old Bridge (Old Bridge). The Society is a statewide organization of chiropractors. Defendant Middlesex County Joint Insurance Fund (JIF), is a municipal insurance pool, established pursuant to *N.J.S.A.* 40A:10–36, providing insurance coverage, including workers' compensation coverage, for a number of New Jersey municipalities, including the Township of Old Bridge in Middlesex County. Defendant William Kurtz (Kurtz) is the Executive Director of JIF. Defendant Insurance Claims Solutions

(ICS) has been the workers' compensation claims administrator for Old Bridge since 1995. Defendant Scibal Associates (Scibal) was the workers' compensation claims administrator for Old Bridge from 1986 to 1995. Defendant Old Bridge/Sayreville Medical Group (Medical Group) is a group of medical practitioners with offices located in Old Bridge and Sayreville. Defendant Allan F. Crane (Crane) was the Risk Manager for Old Bridge, and Terrence G. Blackwell (Blackwell) was its Director of Human Resources.

From 1978 to 1986 Old Bridge maintained a list of doctors authorized to render care to its employees for work-related injuries. Allen was appointed by Old Bridge in 1978 as a treating chiropractor for work-related injuries sustained by Old Bridge employees. In 1982, Shapiro joined him in that practice, which treated between thirty and fifty Old Bridge employees for work-related injuries each year. Shapiro opened his own practice in 1987 and was subsequently appointed as a chiropractic physician to whom referrals of Old Bridge employees could be made by a primary physician.

Old Bridge joined JIF in 1986 and Scibal was designated its claims administrator. After 1986, JIF named Medical Group as one of its approved primary physicians for treatment of workers' compensation injuries, and Medical Group was designated as the primary care provider for Old Bridge employees. Pursuant to the arrangement entered into with JIF, chiropractic treatment for employees' work-related injuries required a referral from an approved primary treating physician at Medical Group. Thus, chiropractors were approved by JIF for referral, but not as primary treating physicians. Chiropractic treatment for a compensation injury that was not the result of a referral from an approved primary treating physician was eligible for payment under the employee's Blue Cross/Blue Shield Major Medical coverage. However, non-referred chiropractic treatment for work connected injury would not be covered by JIF.

Old Bridge's Township Council passed a resolution in March 1992 memorializing its opposition to JIF's refusal to authorize

chiropractic treatment of its work-injured employees which was presented to JIF at its March 1992 meeting. Executive Director Kurtz had noted that any referral to a specialist, including a chiropractor, would be honored, and an employee who desired to see a specialist would be allowed to do so as "authorize[d] ... on a controlled basis." However, a motion to allow some specialists (including Allen and Shapiro) to be primary care providers for workers' compensation injuries was voted upon and defeated at that time.

Plaintiffs allege that after 1986, they did not receive any referrals from JIF or Medical Group, despite the fact that Medical Group has no musculoskeletal experts on staff. Shapiro contends, through his experience, that most workers' compensation claims are musculoskeletal in nature. Allen claims that although patients have requested chiropractic services, Scibal and Medical Group have denied their requests for referrals other than to physicians.

After careful examination of the record, we affirm the dismissal of the complaint, substantially for the reasons stated by the judge in his letter opinion dated October 17, 1996. We add these limited comments.

■ With respect to plaintiffs' claims for tortious interference with their contractual and business relations, our searching review of plaintiffs' allegations does not confirm that they state "legally or ethically improper" actions. *See Raul Intern'l Corp. v. Sealed Power Corp.*, 586 *F.Supp.* 349, 358 (D.N.J.1984); *accord Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 *N.J.Super.* 140, 198–201, 659 *A*.2d 904 (App.Div.), *certif. denied*, 141 *N.J.* 99, 660 *A*.2d 1197 (1995). JIF, as the workers' compensation providing entity for Old Bridge, may lawfully and ethically choose those physicians who it deems qualified to make the full range of professional judgments necessary to conform with the requirements of the workers' compensation statute. Choosing Medical Group, rather than a licensee in a more narrow branch of the medical arts as the primary care provider for injured employees of Old Bridge, and requiring that all visits to specialists be subject to

referrals by the primary care physicians is a permissible employer decision under *N.J.S.A.* 34:15–15. *See Benson v. Coca Cola Co.,* 115 *N.J.Super.* 585, 590, 280 *A.*2d 515 (Cty.Ct.1971), *remanded on other grounds,* 120 *N.J.Super.* 60, 293 *A.*2d 395 (App.Div.1972)(employer has right to make initial choice of physician or hospital for injured employee).

As to plaintiffs' claims that JIF is not immune from antitrust liability under *N.J.S.A.* 56:9–5b(4), we note that whether an entity is an insurer pursuant to the *N.J.S.A.* 56:9–5b(4) exemption "must be determined in light of the purpose of the exemption," which, as noted by the motion judge, was "designed to avoid the situation whereby a state regulatory agency acting pursuant to one statute (the insurance laws) requires conduct which might be held to violate another statute (the Anti-trust Act)." *Borland v. Bayonne Hospital,* 122 *N.J.Super.* 387, 406, 300 *A.*2d 584 (Ch.Div. 1973), *aff'd,* 136 *N.J.Super.* 60, 344 *A.*2d 331 (App.Div.1975), *aff'd,* 72 *N.J.* 152, 369 *A.*2d 1, *cert. denied,* 434 *U.S.* 817, 98 *S.Ct.* 56, 54 *L.Ed.*2d 73 (1977).

While *N.J.S.A.* 40A:10–48 states that a joint insurance fund is not technically an insurance company or insurer under State law, the fund's activities are subject to like regulation by the Commissioner of Insurance [1], and are designed to spread the self-insurance risks of municipal governments. Keeping in mind the purpose of the exemption, in this context, the JIF should be provided immunity under the *N.J.S.A.* 56:9–5b(4) exemption and as an activity authorized by statute. *N.J.S.A.* 56:9–5c [2]; *N.J.S.A.* 40A:10–38 to –51.

---

[1] Under *N.J.S.A.* 40A:10–49 and *N.J.A.C.* 11:15–2.1, *et seq.,* the Commissioner of Insurance promulgates rules and regulations regarding the operation, establishment, modification and dissolution of JIFs established pursuant to *N.J.S.A.* 40A:10–36 to –51. Under *N.J.S.A.* 40A:10–45, the Commissioner of Insurance can require the commissioners of funds to file with him, agreements/contracts which they have entered into, as well as other documents.

[2] *N.J.S.A.* 56:9–5c provides that the New Jersey Antitrust Act "shall not apply to any activity directed, authorized or permitted by any *law of this State* that is in

Plaintiffs say that these immunities are inconsistent with the workers' compensation law, particularly *N.J.S.A.* 34:15–15. However, *N.J.S.A.* 34:15–15 and *N.J.S.A.* 34:15–36 [3] do not require that a particular kind of care must be furnished; only that treatment for workers' injuries must be furnished. Of course, it is implicit that the treatment must conform to recognized professional standards, but it is not for the courts to determine who the treating physicians shall be, nor to mandate to JIF's or to municipalities, jointly or severally, who they must choose as primary providers, or to whom the primary providers shall make referrals. These issues, which are also commonly directed at health maintenance organizations, are properly addressed for legislative and regulatory consideration. We hold that defendants' activities are exempt under *N.J.S.A.* 56:9–5.

Defendants also claim exemption under 15 *U.S.C.A.* § 35(a), which provides that "[n]o damages, ... costs, or attorneys' fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 *U.S.C.* §§ 15, 15a, or 15c) from any local government or official or employee thereof acting in an official capacity." As defined by 15 *U.S.C.A.* § 34(1)(B), the phrase "local government" includes municipalities, cities and counties, and "a school district, sanitary district, or any other special function governmental unit established by State law in one or more states."

JIF is a group of "local units" joined together "to establish a joint insurance fund for the purpose of insuring against liability, property damage, and workers' compensation...." *N.J.S.A.* 40A:10–36. Moreover, every joint insurance fund must operate

---

conflict or inconsistent with the provisions of this act, and the enactment of this act shall not be deemed to repeal, either expressly or by implication, any such other law in effect on the date of its enactment." (Emphasis added).

[3] *N.J.S.A.* 34:15–36 provides in pertinent part:

"Medical services, medical treatment, physicians' services and physicians' treatment" shall include, but not be limited to, the services which a chiropractor is authorized by law to perform and which are authorized by an employer pursuant to the provisions of *R.S.* 34:15–1 et seq.

under the rules and regulations governing the expenditure of public funds by localities, *N.J.S.A.* 40A:10–38e, as well as, pursuant to *N.J.A.C.* 11:15–2.4(a), the Local Fiscal Affairs Law, *N.J.S.A.* 40A:5–1 to –47, and the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to –49. Under *N.J.A.C.* 11:15–2.4(c), a joint insurance fund is considered a "local unit" for the purposes of Local Public Contracts Law.

■ By reason of the role that JIF plays on behalf of its constituent municipalities, and the fact that it must conform to the rules and regulations applicable to other local units, we deem JIF to be a "special function governmental unit" for purposes of immunity. Although plaintiffs assert that 15 *U.S.C.A.* § 35(a) only exempts a local government from *federal* antitrust liability, our antitrust laws are to be interpreted "harmoniously" with federal law. *N.J.S.A.* 56:9–18; *Monmouth Chrysler–Plymouth, Inc. v. Chrysler Corp.,* 102 *N.J.* 485, 494, 509 *A.*2d 161 (1986). We hold that JIF and the individual defendants are exempt from State antitrust liability in this setting.

■ JIF, formed to act on behalf of a group of municipalities, is also immune as a public entity under the Tort Claims Act (*N.J.S.A.* 59:1–1 to:12–3). *See N.J.S.A.* 59:2–1a. A "public entity" is defined as "includ[ing] the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." *N.J.S.A.* 59:1–3. A JIF is no more than an insurance fund established by a governing body under *N.J.S.A.* 40A:10–6, enhanced under the combination authorized by *N.J.S.A.* 40A:10–36.[4] Its commissioners or executive board are subject to the same Local Fiscal Affairs and Public Contracts Laws as a fund administered by a single governing

---

[4] If participating municipalities wish to change a policy of a JIF they have formed, we assume they could join together and so direct. If a single municipality differs from the operating policies acceptable to the other municipalities in a JIF, the option of establishing its own insurance fund under *N.J.S.A.* 40A:10–6 is available.

body, *N.J.S.A.* 40A:10–38e, and they have the same powers and authority, *N.J.S.A.* 40A:10–38a. The Comment to *N.J.S.A.* 59:1–3 illustrates the breadth to be given the definition of public entity:

The definition of "Public Entity" provided in this section is intended to be all inclusive and to apply uniformly throughout the State of New Jersey to all entities exercising governmental functions.... For the purposes of establishing liability in the State of New Jersey this definition is specifically intended to include such entities as the New Jersey Highway Authority and Turnpike Authority and Rutgers the State University.

In consequence, the defendants who are officials and agents of JIF or of Old Bridge, are also immune when acting in good faith. *See N.J.S.A.* 59:3–2 and:3–3; *Brayshaw v. Gelber*, 232 *N.J.Super.* 99, 109–10, 556 *A.*2d 788 (App.Div.1989). They are "not liable for an injury where a public entity is immune from liability for that injury." *N.J.S.A.* 59:3–1.

Affirmed.