**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4148-19

STATEWIDE INSURANCE
FUND, a joint insurance fund
in the State Of New Jersey,

     Plaintiff-Respondent,

v.

STAR INSURANCE COMPANY
and MEADOWBROOK, INC.,

     Defendants-Appellants.

_____

Argued September 29, 2021 – Decided October 21, 2021

Before Judges Whipple, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1645-17.

Thomas E. Schorr argued the cause for appellants (Dilworth Paxson, LLP, attorneys; Thomas E. Schorr, on the briefs).

Francis X. Donnelly argued the cause for respondent (Turner, O'Mara, Donnelly & Petrycki, PC, attorneys; Francis X. Donnelly and Tricia E. Habert, on the brief).

PER CURIAM

This insurance coverage dispute arose because of a tragic incident that took place on a Long Branch beach in 2012, where a twelve-year-old boy, Ezra Cornman, suffocated after digging a hole in the sand with his family.

Ezra's family sued the City of Long Branch (Long Branch) and its employees, primarily the Long Branch Beach Patrol, alleging they were negligent and knew or should have known Ezra's activity could result in the harm that found him.

At the time of the incident, Long Branch was a member of Statewide Insurance Fund (Statewide), a joint insurance fund (JIF), formed pursuant to our joint insurance fund statute, N.J.S.A. 40A:10-36 to -51. Statewide provided Long Branch $10,000,000 in general liability coverage per occurrence. Long Branch also purchased a policy, effective January 1, 2012, to January 1, 2013, with $10,000,000 in coverage per occurrence under policy number CP 0641963 from defendants Star Insurance Company and Meadowbrook Inc. (collectively, Star).

On April 28, 2017, Statewide filed a complaint against Star in the law division seeking a declaratory judgment for excess insurance coverage. Star removed the action to the United States District Court for the District of New

Jersey on June 7, 2017. Long Branch also filed a companion declaratory judgment action similar to Statewide's in March 2017, which was deemed moot after Statewide and Star agreed to fund a settlement as Ezra's case approached trial. This settlement included agreed-upon methods to determine when the self-insurance retention (SIR) limit of $1,000,000 would be reached, and how each insurer would fund the settlement in the interim. Because of this settlement, Long Branch is not a party to this appeal and our opinion only addresses the primacy of coverage here.

In March 2018, Statewide filed an amended complaint alleging that under N.J.S.A. 40A:10-36, their coverage was not considered "insurance" for the purposes of applicable "other insurance clauses." United States District Judge Michael A. Shipp, on March 13, 2018, consolidated Long Branch's later-moot and Statewide's actions. Almost one year later, on February 28, 2019, Judge Shipp abstained from deciding both parties' summary judgment motions and remanded the matter to the Superior Court. Plaintiff filed their motions for summary judgment on February 27 and 28, 2020 in the Law Division.

The court heard oral argument on April 9, 2020, for both motions and on June 5, 2020, denied Star's motion and granted Statewide's, meaning Star was

A-4148-19

solely responsible for payment of the settlement on behalf of Long Branch. This appeal followed.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as the trial judge did, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 536 (1995)).

If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

On appeal, Star argues that although Statewide is a JIF under N.J.S.A. 40A:10-36 and -48, Statewide still must adhere to the terms of its contract. Star argues that JIFs, as insurers, are obligated to follow the general rules of insurance contract interpretation and each policy's "other insurance" clauses are mutually repugnant.

A-4148-19

Star first argues the court misinterpreted N.J.S.A. 40A:10-48. In doing so, Star offers an erroneous reading of the statute that militates against Statewide, and by extension, Long Branch, being self-insured. N.J.S.A. 40A:10-48, however, provides:

> A joint insurance fund established pursuant to the provisions of this act is not an insurance company or an insurer under the laws of this State, and the authorized activities of the fund do not constitute the transaction of insurance nor doing an insurance business. A fund established pursuant to this act shall not be subject to the provisions of Subtitle 3 of Title 17 of the Revised Statutes.

Star asserts the first sentence provides the natural and logical predicate for the second sentence's explicit statement that JIFs are not subject to the regulations applicable to insurers admitted to sell policies in New Jersey. According to Star, then, under one interpretation of N.J.S.A. 40A:10-48, JIFs provide insurance to their members but are not subject to extensive insurance regulations. Star alternatively argues Statewide could hold itself out as a low-cost insurer, draft an insurance policy, include another insurance clause, and disregard the policy terms. We disagree. Statewide is statutorily protected from being considered insurance by third parties per the Legislature.

The trial court found that:

A-4148-19

[T]his [c]ourt agrees that joint insurance funds are not insurance companies or insurers. There can be no stronger indication of the Legislature's intent than the clear an[d] unambiguous language of the relevant statu[t]es. N.J.S.A. 40A:10-48 undeniably states that joint insurance funds are not <u>insurance companies or insurers</u>. . . . Assuming the Legislature intended joint insurance funds to be treated like insurance companies as suggested by Star, the Legislature could have altered, amended and/or supplemented the language contained in the enabling statute and/or N.J.S.A. 40A:10-48 by specifically including such language in the legislation. However, they chose not to include any such language.

It is not this [c]ourt's role to write in additional qualifications which the Legislature pointedly omitted in drafting N.J.S.A. 40A:10-36 [to -51], and/or specifically N.J.S.A. 40A:10-48. Nor should this [c]ourt engage in conjecture or surmise concerning the Legislature's intent that would circumvent the plain meaning of the statutes. While joint insurance funds are subject to review and regulation by [Department of Banking and Insurance] [DOBI], this review does not permit this [c]ourt [to] ignor[e] the clear and unambiguous language of the statute that joint insurance funds are not insurance companies or insurers. This strict interp[retation] of N.J.S.A. 40A:10-48 remains consistent with rationale set forth in <u>Shapiro</u>[1] and <u>West[ville]</u>[2].

---

[1] <u>Shapiro v. Middlesex Cty. Mun. Joint Ins. Fund</u>, 307 N.J. Super. 453, 458 (App. Div. 1998).

[2] <u>Borough of Westville, N.J. v. City of Philadelphia</u>, 89 F. Supp. 3d 636, 640 (2015) ("Joint insurance funds are explicitly not insurers under New Jersey law: 'A joint insurance fund established pursuant to the provisions of this act is not an insurance company or an insurer under the laws of this State, and the

Star argues the trial court's interpretation suggests the Legislature meant to allow JIFs the opportunity to "not actually afford[] genuine insurance" to its customers. We disagree.

There is a difference between self-insurance and no insurance. As has been observed, the term "self-insurance" is ambiguous. 1A Couch on Insurance § 10:1, at 10:3 (3d ed., 2010). In some respects, "so-called self-insurance is not insurance at all. It is the antithesis of insurance." Am. Nurses Ass'n v. Passaic Gen. Hosp., 192 N.J. Super. 486, 491 (App. Div. 1984), aff'd in part, rev'd in part, 98 N.J. 83 (1984).

> The essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer. The essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract.
>
> [Ibid.]

However, under some circumstances, "self-insurance" is more than "no insurance." See ibid.

> In a sense, all risks not otherwise insured are "self-insured." However, many formal procedures exist whereby an entity can become recognized as a self-insurer. This is most commonly accomplished by filing

authorized activities of the fund do not constitute the transaction of insurance nor doing an insurance business.'").

A-4148-19

a bond or furnishing another form of proof of the ability to pay amounts for which the self-insurer may become liable. To meet the conceptual definition of self-insurance, an entity would have to engage in the same sorts of underwriting procedures that insurance companies employ. These underwriting procedures include: (1) estimating likely losses during the period; (2) setting up a mechanism to create sufficient reserves to meet those losses as they occur; and (3) arranging for commercial insurance for losses that are beyond a preset amount.

[Couch, § 10:1, at 10:3 to 10:4.]

Long Branch had an SIR—a dollar amount specified in a liability insurance policy that must be paid by the insured before the insurance policy will respond to a loss. An SIR limits an entity's exposure to losses below the point at which its insurer becomes liable under an excess policy. Star is the excess policy. Absent some other policy to cover those losses, it may be more accurate to say the entity is uninsured. In American Nurses Association v. Passaic General Hospital, a hospital had a "self-insured sum" of $100,000, before its liability insurance, which covered its nurses, would be implicated. 98 N.J. 83, 88-90 (1984). A nurse was separately covered by her own policy, which made "other insurance" primary. Id. at 86-87. Her insurer contended that the hospital's "self-insured sum" qualified as "other insurance." Id. at 88-89.

The Court disagreed. Noting that the "tendency has been not to regard self-insurance as 'insurance,'" the Court concluded that nothing in the hospital's policy required it to pay the first $100,000 of a judgment against the nurse, nor was the hospital otherwise obligated to pay the first $100,000. Id. at 89. Furthermore, the hospital's decision to investigate the claim, which arose out of its insurance package, did not compel it to pay the first $100,000. Id. at 90.

In short, Star contends Statewide used the word "insurance" in its contracts, held itself out to the public as providing low-cost insurance, is insurance because it has an "other insurance" clause, and is disregarding its own terms. These are incorrect premises. Statewide does not hold itself out as an insurer "at large" to everyone. We discern no legal error in the judge's conclusion.

Relying on Sahli v. Woodbine Board of Education, 193 N.J. 309 (2008), and Shapiro v. Middlesex County Municipal Joint Insurance Fund, 307 N.J. Super. 453 (App. Div. 1998), Star asserts that because Statewide worked with Star to settle Ezra's tort claim, and included an "other insurance" clause, that Statewide is not a self-insurer who can benefit from the statutory protection. We disagree.

9

In Sahli, our Supreme Court primarily addressed whether "a school board attorney is entitled to indemnification under N.J.S.A. 18A:16-6, which provides for indemnification in defense of a civil action for 'any person holding any office, position or employment' with a board of education." Sahli, 193 N.J. at 312. There, the attorney, Sahli, was working for the school board as both a "Board solicitor" and "secretary pro tem." Id. at 313. The Court held Sahli was entitled to indemnification in the civil suit under N.J.S.A. 18A:16-6 for his position as the volunteer secretary pro tem, but not as a Board solicitor. Ibid.

The Court performed a thorough analysis of the Board indemnification statute. Id. at 313-21 (discussing N.J.S.A. 18A:16-6). Then, the Court addressed whether a JIF is required under its policy to reimburse Sahli for his attorney's fees defending him. Id. at 321-22. The Court, however, did not address whether the Joint Fund is a JIF. Therefore, Sahli is not applicable to the issue presented here. We also reject Star's next argument that Shapiro held a "JIF may be considered to be acting as an insurer." Shapiro, 307 N.J. Super. at 453. Shapiro primarily addressed antitrust and tortuous interference claims and is also inapplicable here.

Star next argues the terms of the policies are repugnant. When two policies that provide coverage each have a clause declaring the policy is excess

A-4148-19

over any other policy, the provisions are "mutually repugnant" and are disregarded. W9/PHC Real Estate LP v. Farm Fam. Cas. Ins. Co., 407 N.J. Super. 177, 199 (App. Div. 2009) (citation omitted). The result is that "the carriers stand on equal footing, with each sharing payment of liability equally until the limit of the smaller policy is exhausted." Ibid. (citing Universal Underwriters Ins. Co. v. CNA Ins. Co., 308 N.J. Super. 415, 418-19 (App. Div. 1998)).

Our inquiry goes further, however. We examine "the 'Other-Insurance' clause of each policy to determine whether there exists language which may govern the contribution each party should make." Universal Underwriters, 308 N.J. Super. at 417. But an insurance policy must be read as a whole, Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009), and will be enforced as written when its terms are clear, Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012). "In assessing the meaning of provisions in an insurance contract, [we] first look to the plain meaning of the language at issue." Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 207 (2017) (citing Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). "The words of an insurance policy should be given their ordinary meaning, and in the absence [of an] ambiguity, [this court] should not

engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990). "If the language is clear, that is the end of the inquiry." Oxford, 229 N.J. at 207 (quoting Chubb, 195 N.J. at 238).

The two clauses at issue state, starting with Statewide:

> 3. Other Insurance.
>
>> The insurance afforded by this policy is excess over any other valid and collectible insurance or self-insurance.
>>
>> . . . .
>>
>> When this insurance is excess of other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:
>>
>>> (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>>>
>>> (2) The total of all deductible and self-insured amounts under all that other insurance.

The language of Star's "other insurance" clause provides:

> The Other Insurance Conditions of Section IV— Commercial General Liability Conditions of the Commercial General Liability Coverage Form CG 0001 . . . are deleted in their entirety and replaced with the following:

Other Insurance

a. This Insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

There are two reasons the clauses are not mutually repugnant. First, as the trial court found and as N.J.S.A. 40A provides:

When giving the words of each policy's other insurance clause their plain and ordinary meaning, this [c]ourt agrees the language of the Star policy's "other insurance" clause is only excess over other "insurance." As previously noted, this [c]ourt accepts the rationale set forth in American Nurses and Moore that self-insurance is not insurance. Rather, it has been recognized as the antithesis of insurance.

A plain reading of the respective policies indicates Statewide's policy contains an "other insurance" clause which renders such coverage excess over "any other valid and collectible insurance . . . ," which encompasses the Star policy. However, the other insurance clause in the Star policy does not reference "self-insurance," which is included in the Statewide other insurance clause. When negotiating and drafting its policy, specifically the other insurance clause, Star could have provided that the other insurance clause would be triggered by "valid and collectable insurance or self-insurance" in a similar manner as Statewide. However, this language was not written into the Star policy. It is not the responsibility of this [c]ourt to rewrite a better policy and allow Star to trigger its other insurance clause based upon the presence of the antithesis of insurance, self-insurance. Assuming Star

13

> wanted to include self-insurance as triggering the other insurance clause, it should have been included in the policy and will not be written into the policy at summary judgment on a coverage motion.

[Emphasis added.]

Again, the argument here returns to converting Statewide from a JIF to a commercial insurer, which contradicts the goal of N.J.S.A. 40A:10-48. Star only argues here that "[i]t is not possible to sensibly read the clauses in such a manner as to permit one policy to be primary to the other." When reading the clauses, the sensible conclusion is that Star did not include self-insured JIFs in their clause, while Statewide did. And Statewide is not an insurer under N.J.S.A. 40A:10-48. Thus, Star's argument fails here as well.

All the remaining arguments raised by Star were found to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4148-19