AMERICAN NURSES ASSOCIATION, NATIONAL UNION FIRE INSURANCE COMPANY AND FLORA PANICUCCI, R.N., PLAINTIFFS-APPELLANTS, v. PASSAIC GENERAL HOSPITAL AND ESIS, AN I.N.A. CORPORATION COMPANY, DEFENDANTS-RESPONDENTS, AND THE INSURANCE COMPANY OF NORTH AMERICA, DEFENDANT-APPELLANT, AND HERMOGENES CIOCON, M.D., MICHAEL R. RAMUNDO, M.D., FRANK WADE, AN INCOMPETENT BY HIS GUARDIAN AD LITEM JUNE WADE, AND JUNE WADE, INDIVIDUALLY, DEFENDANTS.

Argued November 5, 1984—Decided December 11, 1984.

84

*Walter E. Monaghan* argued the cause for appellants American Nurses Association, et al. (*Haggerty & Donohue,* attorneys; *Mr. Monaghan* and *J. David Woods,* on the briefs).

*Antonio D. Favetta* argued the cause for appellant The Insurance Company of North America (*Lamb, Chappell, Hartung, Gallipoli and Coughlin,* attorneys).

*John I. Lisowski* argued the cause for respondents (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Paul A. Lisovicz,* on the brief).

The opinion of the Court was delivered by

SCHREIBER, J.

The National Fire Insurance Company (National) issued an insurance policy covering the contractual obligations of the American Nurses Association (Association) to its members. The Association's agreement with its members was in the form of a liability insurance policy. We shall refer to the Association's agreement as National's policy, since National stood in the Association's shoes. The policy included an excess insurance provision, which called for payment only after a member's other "valid and collectible insurance" was exhausted. The issue is what the parties intended by their reference to "insurance" in this provision.

The question arose under the following circumstances. The Passaic General Hospital (Hospital), a nonprofit charitable institution, had a liability policy with the Insurance Company of North America (INA). The policy covered the Hospital and its employees, including nurses. However, INA was obligated to pay only damages in excess of $100,000. The policy referred to this $100,000 deductible as the Hospital's "annual self-insured sum." The INA policy was also to be excess over any other applicable insurance policy held by a Hospital employee. This latter provision was comparable to National's excess provision and read as follows:

> If any employee * * * has another policy or policies covering a loss insured hereunder, the insurance with respect to such loss under this policy shall be excess over the amount set forth as the limit of liability under such other policy or policies.

INA's policy provided a maximum of $500,000 for each claim.

Flora Panicucci, a registered nurse at the Hospital, was also insured against liability by National through the American Nurses Association, of which Panicucci was a member. Panicucci's agreement with the Association provided that the Association would pay all sums that the member became "legally obligated to pay as damages because of Nurses Professional Liability" up to $200,000 per claim. The agreement included the following provision:

Other Insurance:

If the Member has valid and collectible insurance for an occurrence protected by this Agreement, the protection provided by this Agreement shall apply only as excess of such insurance and then only when such insurance is exhausted by payment in settlement of a claim or payment of a judgment.

National issued an insurance policy by which it undertook to pay on behalf of the Association any liability that the Association had assumed by virtue of the agreements with its members. National also assumed the Association's duty to defend and its right to investigate and settle "any claim or suit as it deem[ed] expedient * * *."

Panicucci, acting as an employee of the Hospital, negligently performed her nursing duties in the Hospital's recovery room and as a result injured Frank Wade, a patient. Wade sued Panicucci. The action was settled for $375,000, with settlement funds advanced by National, the Hospital, and INA. Thereafter, National instituted this suit against the Hospital and INA[1] seeking a declaratory judgment that National's policy was to be resorted to only after the Hospital and INA had met their obligations under the INA policy.

The Hospital moved for summary judgment and National filed a cross-motion for summary judgment. The facts were stipulated. National's motion for summary judgment was granted as modified by the trial court. 184 *N.J.Super.* 170 (Law Div.1981). The trial court reasoned that the Hospital had undertaken to indemnify its employees and that its "self-insured" sum of $100,000 constituted "other insurance" under the excess insurance provision of National's policy. Therefore, the Hospital

---

[1]The named plaintiffs were Flora Panicucci, American Nurses Association, and National Fire Insurance Company. The real party in interest is National.

The named defendants were the Hospital, INA, ESIS, which was a wholly-owned INA subsidiary, Dr. H. Ciocon, Dr. M.R. Ramundo, Frank Wade by his guardian ad litem June Wade, and June Wade, individually. The real parties-defendant in interest are the Hospital and INA.

was required to pay the first $100,000. National and INA were to share equally the balance of $275,000.

The Appellate Division reversed, 192 *N.J.Super.* 486 (1984). It concluded that the $100,000 characterized as a "self-insured sum" in the INA policy was merely a deductible and did not constitute "other insurance." Accordingly, National had to pay the first $100,000. The Appellate Division *sua sponte* decided that National and INA should share the $275,000 balance pro rata and not equally.

We granted petitions for certification filed by National and INA. 97 *N.J.* 615 (1984).

I

We must first determine whether the Hospital's "self-insured sum" was a deductible or whether it constituted "other insurance" as contemplated in the excess provision of National's policy. The key question is what, objectively, was the reasonable expectation of an Association member when she obtained the liability insurance from National. *See Di Orio v. New Jersey Mfrs. Ins. Co.,* 79 *N.J.* 257, 269 (1979); *Kievit v. Protective Life Ins. Co.,* 34 *N.J.* 475, 482 (1961). "The policy should be read as the ordinary policy-holder would understand it." *Kissil v. Beneficial Nat'l Life Ins. Co.,* 64 *N.J.* 555, 561 (1974). National's excess provision refers to "valid and collectible insurance for an occurrence," "excess of such insurance," and "when such insurance is exhausted." In our opinion, lay persons would consider "insurance" to refer to another insurance policy comparable to the one issued to them. Such references would not ordinarily be understood to include the obligation of an insured to pay a deductible.

Though a deductible is frequently referred to as self-insurance, its functional purpose is simply to alter the point at which an insurance company's obligation to pay will ripen. " 'Other insurance' [in an excess provision] means a policy of

insurance of like kind issued by an insurance company in exchange for a premium charged." 16 *G. Couch, Insurance* 2d § 62.87 (rev. ed. 1983). While there is a split of authority on this question, the tendency has been not to regard self-insurance as "insurance." 8A *J. Appleman, Insurance Law and Practice* § 4912 (rev. ed. 1981); *see Universal Underwriters Ins. Co. v. Marriott Homes, Inc.*, 286 *Ala.* 231, 238 *So.*2d 730 (1970); *State Farm Mut. Automobile Ins. Co. v. Universal Atlas Cement Co.*, 406 *So.*2d 1184 (Fla.App.1981), review denied, 413 *So.*2d 877 (Fla.1982); *American Family Mut. Ins. Co. v. Missouri Power & Light Co.*, 517 *S.W.*2d 110 (Mo.1974); *United Nat'l Ins. Co. v. Philadelphia Gas Works*, 221 *Pa.Super.* 161, 289 *A.*2d 179 (1972); *Allstate Ins. Co. v. Zellars*, 452 *S.W.*2d 539 (Tex.Civ.App.), modified on other grounds, 462 *S.W.* 2d 550 (Tex.1970). *But see Southern Home Ins. Co. v. Burdette's Leasing Serv.*, 268 *S.C.* 472, 234 *S.E.*2d 870 (1977).

▮ The relationship between the Hospital and INA created by the INA policy confirms the conclusion that Panicucci did not have "valid and collectible insurance" with the Hospital with respect to the first $100,000. The named insured in the INA policy was the Hospital. In an additional endorsement, the unqualified word "insured" was defined to include any Hospital employee "acting within the scope of his duties." The policy provided that "[t]he obligation of [INA] to pay damages on behalf of the Insured, arising from occurrences or claims for which insurance is provided, applies only to the damages in excess of the self-insured sum" of $100,000. There is nothing in the INA policy that required the Hospital to pay the first $100,000 of a settlement or judgment obtained by a third person against its employee. Nor did the INA policy refer to any collective bargaining or other binding agreement between the Hospital and its nurses that might have obligated the Hospital to pay the first $100,000. Although the Hospital had no obliga-

tion to do so, it had voluntarily opted, as a matter of policy, to protect nurses who had no insurance coverage.[2]

█ Indeed, even if the Hospital had a binding agreement to indemnify its employees for their negligence, we agree with the Appellate Division that such private indemnity agreements are not what the parties contemplated when they referred in their insurance policy to "other" insurance. Judge Pressler, writing for the Appellate Division, stated:

> As a matter of common understanding, usage, and legal definition, an insurance contract denotes a policy issued by an authorized and licensed insurance company whose primary business it is to assume specific risks of loss of members of the public at large in consideration of the payment of a premium. There are, however, other risk-shifting agreements which are not insurance contracts. These include the customary private indemnity agreement where affording the indemnity is not the primary business of the indemnitor and is not subject to governmental regulation but is merely ancillary to and in furtherance of some other independent transactional relationship between the indemnitor and the indemnitee. The indemnity is, thus, not the essence of the agreement creating the transactional relationship but is only one of its negotiated terms. [192 *N.J.Super.* at 494–95.]

█ National also argues that the Hospital acted as an insurer because it and not INA had the duty to investigate claims. This position fails to acknowledge the Hospital's agreement with ESIS, a wholly-owned INA subsidiary. That agreement was entered into when the INA policy was issued and ESIS undertook to investigate, defend, and settle claims. The Hospital's agreement with ESIS must be seen as part and parcel of the insurance package offered by INA. That the Hospital chose to investigate this matter independently does not lead to the conclusion that the Hospital considered itself obligated to pay. The Hospital had an independent interest as a public health institution to investigate and ascertain the causes of any mishap.

We hold that National's policy is primary insurance with respect to the first $100,000 of the settlement of the claim against Panicucci.

---

[2]We note that the Hospital is not liable to a beneficiary for damages exceeding $10,000. *N.J.S.A.* 2A:53A–8.

## II

The trial court, applying the doctrine of *Cosmopolitan Mut. Ins. Co. v. Continental Casualty Co.*, 28 *N.J.* 554 (1959), ordered that the balance of the loss, $275,000, be shared equally by National and INA. 184 *N.J.Super.* at 183. Though the issue was not raised on appeal, the Appellate Division reversed and held that INA and National were to share the $275,000 pro rata. 192 *N.J.Super.* at 496.

In *Cosmopolitan*, one insurance company's liability policy provided maximum coverage of $300,000; the other company's policy provided maximum coverage of $10,000. Both policies contained excess "other insurance" provisions. We rejected a pro rata sharing and held that the loss should be equally apportioned, since the cost of liability insurance does not increase proportionately with the amount of the policy limits. 28 *N.J.* at 564. The cost of increased coverage is relatively small compared to the cost of minimum coverage. No reasons have been advanced why that principle should be abandoned when the "other insurance" provision of both policies is an excess clause. *See* Anderson, "Other Insurance Clauses in Automobile Liability Insurance Policies: An Analysis and a Legislative Proposal," 1976 *Ins.L.J.* 225, 229–30 (1976). In fact, National and INA both urge that the *Cosmopolitan* principle should be applied. We agree.

## III

The judgment of the Appellate Division that National is liable for the first $100,000 of the settlement is affirmed. The Appellate Division judgment that the excess be shared pro rata is reversed, and the judgment of the trial court that the excess be shared equally up to the limits of National's policy is reinstated.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal*—None.