**DOME PETROLEUM LIMITED, a corporation of Canada; and Dome Energy Limited, a corporation of Canada, Plaintiffs,**

v.

**EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, a mutual insurance company of Wisconsin; Frank Mulvey, Anthony Rotella, Teresa Helen Ernst and the First Jersey National Bank, a national bank with its principal office in New Jersey, Defendants.**

Civ. A. No. 84–97.

United States District Court, D. New Jersey.

May 29, 1986.

Cole, Schotz, Bernstein, Meisel & Forman, Rochelle Park, N.J., by Morrill J. Cole, (Mayer, Brown & Platt, Chicago, Ill., of counsel), for plaintiffs.

Hannoch Weisman, Roseland, N.J. by Joseph J. Fleischman (Peterson, Ross, Schloerb & Seidel, Chicago, Ill.,) for defendants Employers Mut. Liability Ins. Co. of Wis. and The First Jersey Nat. Bank.

## OPINION

STERN, District Judge.

Defendant First Jersey National Bank, acted as depository for plaintiff Dome Petroleum, Ltd., in Dome's 1981 tender offer for the stock of Conoco, Inc. First Jersey erroneously distributed to other tenderors money owing to a group of tenderors known as the "State Street Group." First Jersey paid the State Street Group $3.5 million dollars in compensation. It obtained a loan in that amount from its insurer, defendant Employers Mutual Liability Insurance Co. of Wisconsin, on the understanding that First Jersey would attempt to recover the money elsewhere. First Jersey then sued Dome for indemnification under its depository agreement. This Court granted First Jersey summary judgment, and was affirmed, *First Jersey National Bank v. Dome Petroleum, Ltd.,* 723 F.2d 335 (3d Cir.1983) (*"Dome I"*).

Dome then brought the present action to assert its subrogation rights under the agreement against First Jersey's insurer, Employers. This Court dismissed the suit, holding *inter alia* that New Jersey law permitted subrogation only against wrongdoers. The Court of Appeals reversed on this point. It also concluded that under the depository agreement, as a matter of New Jersey law, "Dome assumed ultimate risk of loss only in the event that there was no

third party that might be liable to First Jersey." *Dome Petroleum, Ltd. v. Employers Mutual Liability Insurance Co.,* 767 F.2d 43, 47 (3d Cir.1985) (*"Dome II"*).

The Court of Appeals was unable to determine whether Dome could recover under the subrogation clause because it could not say whether Employers' insurance policy with First Jersey placed the ultimate risk of loss on Employers. That issue had not been raised in the motion for summary judgment. The case was therefore remanded for the construction of the insurance policy and, if necessary, the application of suppletive rules of law to allocate the risk of loss. *Id.*

Defendants now move for dismissal or for summary judgment on the remaining counts of Dome's complaint. In support of their motion, they argue a number of separate points. All rest on one of two premises: that First Jersey suffered no "loss" for which Employers is required to compensate; and that Dome, by agreeing to indemnify First Jersey, became an "insurer" of the risk. As both these premises are incorrect, defendants' motion must be denied.

## I. *The Argument that First Jersey Suffered no "Loss."*

■ First Jersey's insurance policy specifies that Employers will "indemnify the insured ... against loss ... incurred ... by reason of liability imposed by law ... or ... settlement." Employers is not obligated to pay until "the insured has paid such amount" out of its own pocket.

Defendants make much of a distinction between insuring for loss and insuring for liability. They argue that if Dome had lived up to its indemnity agreement, it would have paid the State Street Group immediately and First Jersey would have never suffered a compensable loss. The fact that First Jersey actually did pay, say defendants, should not alter the analysis, because Dome should not be allowed to profit from its initial refusal to indemnify First Jersey.

Unfortunately for defendants, this argument misconstrues the legal nature of indemnification and subrogation. Having indemnified First Jersey, Dome itself has suffered a loss. Under its subrogation agreement, it can bring a claim based on First Jersey's policy in the same way that First Jersey could have in the absence of the indemnification. Whether First Jersey can be said to have suffered a loss is of no moment. 16 *Couch on Insurance* 2d § 61:61 at 143 (rev'd ed. 1983).

## II. *The Argument that the Dome-First Jersey and Employers-First Jersey Subrogation Clauses Cancel Each Other Out.*

■ Both the Dome-First Jersey depository agreement and the Employers-First Jersey insurance policy contain subrogation clauses. Defendants claim that the clauses are "equally comprehensive," and therefore "are mutually repugnant and become inoperative." The argument leads to the unappealing conclusion that the risk of loss should remain where First Jersey chose to place it—on Dome, by enforcing the indemnification clause, instead of on Employers, by invoking its insurance coverage. This is an anomalous outcome for a transaction involving contracts containing such explicit risk-of-loss provisions. The Court of Appeals, moreover, implicitly disapproved of such a result when it said that, in the event that "both Employers and Dome intended to shift ultimate responsibility to each other," this Court "should look to suppletive rules of law to determine who the ultimate risk-bearer should be." *Dome II,* 767 F.2d at 47.

If the mutual subrogation clauses are indeed "mutually repugnant," the suppletive rules applicable in New Jersey seem to indicate that "each company is obligated to share" the loss. *Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co.,* 28 N.J. 554, 562, 147 A.2d 529 (1959); *accord, American Nurses Ass'n v. Passaic General Hospital,* 98 N.J. 83, 91, 484 A.2d 670 (1984). There is certainly no reason to grant summary judgment for defendants on this theory.

III. *The Argument that Employers' "Other Insurance" Clause Precludes its Liability.*

██ Employers' contract with First Jersey contains a clause providing that it will pay only the difference between any loss and the coverage provided by "other policies of insurance." Defendants make two arguments based on this clause. First, they say that Dome's indemnification clause is, as a simple matter of contract interpretation, "other insurance," so that Employers is not liable. This is incorrect. In *American Nurses Ass'n,* 98 N.J. at 90, 484 A.2d 670, the New Jersey Supreme Court held (quoting with approval the Appellate Division's opinion):

> There are, however, other risk-shifting agreements which are not insurance contracts. These include the customary private indemnity agreement where affording the indemnity is not the primary business of the indemnitor and is not subject to governmental regulation but is merely ancillary to and in furtherance of some other independent transactional relationship between the indemnitor and the indemnitee.

In that case, the Court found that the parties had not contemplated such "private indemnity agreements ... when they referred in their insurance policy to 'other' insurance." *Id.* Defendants here have not shown that Employers and First Jersey *did* mean to treat such agreements as insurance. Summary judgment for them on this point, therefore, is not warranted.

Defendants also argue that the "other insurance" clause evinces Employers' intent not to be the ultimate risk-bearer. The clause, however, merely evinces such an intent vis-a-vis other insurers—not as against an indemnitor like Dome.

IV. *The Arguments Distinguishing between Types of Insurance.*

A. *"Primary" v. "Excess" Insurance.*

██ Defendants argue that, because Dome's indemnification agreement applied to this specific transaction, while Employers' insurance was a policy for liability generally, Dome's indemnification should be treated as primary insurance and Employers' as excess insurance. (Defendants cite 16 *Couch on Insurance* 2d § 62:48 (rev'd ed. 1983) for this principle). As defendants cannot show that the indemnification agreement should be treated as insurance, the argument fails.

B. *"Limited" v. "Unlimited" Indemnification*

██ Defendants argue from a California case, *Pylon, Inc. v. Olympic Insurance Co.,* 271 Cal.App.2d 643, 77 Cal.Rptr. 72 (1969), that the fact that Employers' insurance policy has a dollar limitation, while Dome's indemnification does not, is an indication that Dome is the ultimate risk-bearer. The *Pylon* case is completely inapposite, however, because it was a suit for contribution. No subrogation clauses were involved. The California court held that the lack of contractual limitation on liability for one party meant that no proportional allocation of liability was possible. The existence of the subrogation clauses here completely overwhelms any inference about intention to bear risk that can be made from the presence or absence of dollar limits.

V. *The Contractual Indemnitor v. Insurer Argument.*

Defendants argue that, as a matter of New Jersey law, an indemnitor becomes the ultimate risk of loss vis-a-vis an insurer. The Third Circuit explicitly considered this possibility in *Dome II* and rejected it: "In this case, there is no indication of any mandatory public policy that would require that the risk of loss fall on a contractual indemnitor as opposed to an insurer ... Thus we conclude that Dome and First Jersey were free to place contractually the ultimate risk of loss upon Employers to the extent permitted by Employers' policy with First Jersey." *Dome II,* 767 F.2d at 46. For purposes of this litigation, therefore, the question is settled. *Zenith Labs, Inc. v. Carter-Wallace, Inc.,* 64 F.R.D. 159, 164

(D.N.J.1974), *aff'd,* 530 F.2d 508 (3d Cir. 1976), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976) (describing the doctrine of law of the case).

In any event, the cases cited by the defendant are not on point, as the indemnification agreements they concern did not contain subrogation clauses.

### VI. *The Paragraph 12.7 Argument.*

■ The Dome-First Jersey agreement contains two indemnification clauses. One, Para. 16.1, covers all non-willful losses to First Jersey and contains a subrogation clause. The other, Para. 12.7, covers only losses incurred in good faith and after consultation with counsel, and contains no subrogation clause. Defendants now argue that Dome's indemnification was required under Para. 12.7, so that the subrogation clause does not apply. They say that *after* First Jersey's mistake, it consulted with counsel on the best way to make good the loss. This argument simply ignores the facts. The original mistake—which is the key point—was made negligently and without advice of counsel. The Third Circuit so found when it ordered Dome to indemnify First Jersey on the basis of Para. 16.1. *Dome I,* 723 F.2d at 340–41. (*Dome I* also held that "First Jersey is indemnified under paragraph 12.7 of the Agreement against the consequences of its chosen remedy," 723 F.2d at 343—a very different point going to the propriety of First Jersey's actions *after* the loss was incurred. It does not affect the court's conclusion that indemnification for the loss stemming from the original mistake was required by Para. 16.1.)

### VII. *The Time-Bar Argument.*

■ The Employers-First Jersey insurance policy contains a twelve-month limitation on lawsuits for failure to pay a claim. Defendants say that Dome, not having brought suit within twelve months of the loss, is barred by this limitation.

New Jersey, however, has interpreted such clauses to mean that suit may not be brought twelve months after the insurer has *refused* to pay a claim. *Peloso v. Hartford First Insurance Co.,* 56 N.J. 514, 521, 267 A.2d 498 (1970). Here, Employers, by lending the amount of the claim to First Jersey during the pendency of the *Dome I* suit for indemnification, evidenced a willingness to pay. At least, there is no indication of a refusal to pay until Dome requested payment—a date well within the twelve-month limit.

### VIII. *Dome's Alleged Inequitable Conduct.*

■ When not contractually agreed upon, the right of subrogation is often granted by courts as an equitable matter. Defendants argue from cases concerning this equitable right that Dome should be barred from asserting its contractual subrogation right due to its inequitable behavior. Dome points out that the standard is not "inequitable" behavior, but unconscionability. *Standard Accident Insurance Co. v. Pellechia,* 15 N.J. 162, 175, 104 A.2d 288 (1954). Neither Dome's initial refusal to rescue First Jersey from its $3.5 million mistake, nor its willingness to litigate the applicability of the indemnification clause can be deemed unconscionable. Thus, even if the equitable principles apply to a contractual subrogation clause, Dome does not face a bar to its suit.

### IX. *Dome's Count 4.*

■ All of the above discussion concerns Count 1 of Dome's complaint, which is aimed at recovering from Employers the sum paid as indemnification to First Jersey. Defendants also move to dismiss Dome's Count 4, which is intended to allow Dome to recover from First Jersey in the event that First Jersey destroyed Dome's subrogation right by some yet undiscovered act. Defendants scoff at this possibility, but nowhere do they actually admit that Dome's right has not been impaired. There are conceivable fact situations for which Dome's claim could be meritorious, *e.g.,* at some early point First Jersey requested payment from Employers, and Employers refused thus activating the time

bar. The motion for summary judgment on this Count, therefore, is denied without prejudice pursuant to Rule 56(f).