## CIRCUIT COURT OF THE CITY OF RICHMOND

Coleman

v.

Johnson

August 25, 1987

By JUDGE JAMES M. LUMPKIN

I. *Plaintiff's Claim for $2,573.00 for Services Rendered in the Keel Case*

Coleman's claim is based on Paragraph 20 of the Redemption Agreement between Coleman and Johnson. Paragraph 20 requires Coleman and Johnson to reimburse each other for fifty percent of all "reasonable" expenses, services, and liabilities incurred by Coleman or Johnson for work done in connection with litigation arising after Coleman left the Corporation on August 1, 1981.

Coleman's "Description of Work Activity" lists and accounts for time spent on a number of activities connected with the *Keel* matter. Three items on this list are subject to reasonable dispute: Coleman's trip to London, for which he billed 27.0 hours (described in further detail in Defendant's Exhibit # 6); a four-hour correction to the original billing; and time spent working up and computing the service invoice (one hour).

It is axiomatic that agreements made by contracting parties constitute the law between those parties. *Winn v. Aleda Constr. Co.*, 227 Va. 304 (1984). Paragraph 20 of the Redemption Agreement provides that all expenses for which reimbursement is sought be reasonable and that all time billed be spent solely in connection with pending litigation.

With regard to the London trip, Coleman sought reimbursement for expenses incurred as air fare, a one-week

stay in a hotel, a number of meals, taxi fares, and tips. These expenses should be reimbursed at a fifty percent rate, but only to the extent that they are reasonably related to the *Keel* case. The evidence indicates twenty percent of the time was related to *Keel*; hence recovery should be for ten percent of the plane fare, not fifty percent. The same fraction applies to time spent in England.

With regard to the four-hour correction, both parties have apparently noted that the four hours are billed at a rate higher than that in effect when they were performed. They should be billed at the rate in effect at the time of performance.

With regard to the hour billed for time spent working up and computing the service invoice, the issue is whether such time was spent solely in connection with the *Keel* case. Time spent in preparing a bill would seem to be in the best interest of the business and not of the client. Along these same analytical lines, when Coleman billed Johnson for time spent in preparing a bill, he acted in connection with his own interest and not in connection with the litigation. Accordingly, this time is disallowed.

Note, however, that paragraph 20 provides that in case a dispute arises over reimbursement, the party seeking reimbursement, if successful, can recover the fees, costs, and expenses in obtaining payments of the amounts owed. Therefore, the appropriate place for Coleman's claim for time spent in preparing a bill would seem to be in his pleadings, but not in his invoice.

## II. *Defendant's Counterclaim*

The defendant alleges in his counterclaim that when the *Keel* case was settled, the defendant's corporation incurred a liability of $5,000.00 of which the defendant seeks a fifty percent reimbursement from the plaintiff pursuant to Paragraph 20 of the Redemption Agreement. The plaintiff, Coleman, states that paragraph 20 requires "[a]ny settlement of. . . pending litigation" to be "approved in writing by Coleman, Johnson, and the Corporation." Coleman argues from this statement that since his consent in writing to the settlement of the *Keel* case was never obtained, he is not obligated to reimburse Johnson for his fifty percent share. Johnson, on the other hand, argues

that St. Paul, the insurance carrier, which settled the claim and made the settlement payment, did not need the consent of either Johnson, Coleman, or the Corporation. Johnson further argues that the plaintiff's resources were wholly unexposed to the obligation of paying the settlement. Johnson's conclusion is that Coleman is not being called on to pay fifty percent of a settlement but rather fifty percent of the deductible, which Johnson classifies as an expense of the litigation.

The function of a deductible is simply to alter the point at which an insurance company's obligation to pay a claim will ripen. *American Nurses' Ass'n. v. Passaic Gen'l. Hosp.*, 484 A.2d 670, 673 (1984). According to the Insuring Agreement entered into between Johnson and Coleman and the insurance carrier, the insurer has "the right and duty to defend, in [the insured's] name and behalf, any suit against the Insured. . . and may make such. . . settlement. . . as it deems expedient . . . ." The insurer "may pay any part or all of the Deductible Amount to effect settlement. . . and upon notification, the Named Insured shall promptly reimburse the [insurer]. . . ." In the case at hand, the settlement of the *Keel* case was not subject to the consent or approval of either the plaintiff or the defendant, but instead was entirely dependent upon the approval of the St. Paul Insurance Company. St. Paul's payment of the entire deductible amount, under the Insuring Agreement, invokes a pre-existing obligation of Johnson and Coleman to reimburse the insurer. The $5,000.00 paid by Johnson to St. Paul was not payment of a settlement to Keel but was instead a reimbursement to the carrier. As such, Paragraph 20 of the Redemption Agreement between Coleman and Johnson requires that Coleman reimburse Johnson half of the cost of extinguishing this liability, or $2,500.00.

An alternative analysis yields the same result. If the reimbursement to the carrier were deemed to be a contractual obligation outside the ambit of Paragraph 20, then the Redemption Agreement would not apply. In such a case, the equitable principles of contribution would require that Coleman reimburse Johnson half of the cost of the payment to the carrier, or $2,500.00.