575 A.2d 489

RYDER/P.I.E. NATIONWIDE, INC., PLAINTIFF–APPELLANT, v. HARBOR BAY CORPORATION, INC., DEFENDANT–RESPON-DENT, AND COLCON SERVICES, INC., TIMOTHY RODER-MOND AND JUDITH RODERMOND, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued September 27, 1988—Decided October 14, 1988.

Before Judges O'BRIEN and SCALERA.

*Charles F. Sheeler,* Closter, for plaintiff-appellant (*Hogger and Sheeler,* attorneys, *Joseph Coult,* of counsel, *Charles F. Sheeler,* on the brief).

*Brian R. Ade,* Hackensack, for defendant-respondent (*Harwood, Lloyd, Ryan, Coyle and McBride,* attorneys, *Brian R. Ade,* on the brief).

PER CURIAM.

Ryder/P.I.E. Nationwide, Inc. (Ryder) appeals from an adverse judgment rendered against it and in favor of Harbor Bay Corporation, Inc., following a bench trial of this declaratory judgment action to determine the extent of the liability of Ryder as a self-insured. We reverse.

The facts upon which the judgment was rendered are undisputed. On March 29, 1983 Timothy Rodermond was operating a truck for a Ryder subsidiary when he was injured by a forklift operator. The accident occurred while Rodermond was making a delivery at the Harbor Bay Warehouse Corporation, Inc. (Harbor Bay) warehouse. It was stipulated that the injury occurred during the course of the "loading and unloading" phase of the delivery and that the standard clause in an automobile liability policy would have provided coverage for Harbor Bay as an "additional insured." As a consequence Ryder agreed to provide Harbor Bay with such coverage.

The dispute arose when Ryder took the position that it was only responsible to pay to Rodermond on Harbor Bay's behalf up to the limits of $15,000 per person and $30,000 for the entire accident as required by New Jersey's Financial Responsibility Law, *N.J.S.A.* 39:6–23 *et seq.* and the Compulsory Motor Vehicle Insurance law, *N.J.S.A.* 39:6B–1 *et seq.* Harbor Bay insisted that Ryder was liable to indemnify it to the extent of $65,000, the amount for which Rodermond's claim against it had been settled and the reasonableness of which was not disputed.

As a consequence, Ryder instituted this suit for declaratory judgment seeking an adjudication consistent with its position. The matter was tried on the basis of stipulated facts and documents as well as brief testimony by Ryder's vice-president of risk management. He indicated that in the early 1970's Ryder undertook to become self-insured in New Jersey pursuant to *N.J.S.A.* 39:6–52 which provided at that time,[1]

(a) Any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the director [of Motor Vehicles] as provided in subsection (b) of this section.

(b) The director may, in his discretion, upon the application of such a person issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.

Ryder submitted its application, including evidence of its financial responsibility and also posted an indemnity bond issued by the American Casualty Company, pursuant to the "New Jersey Motor Vehicle Security Responsibility Law," providing that the surety would agree to pay up to $10,000/$15,000 for damages on behalf of Ryder "or any other person using or responsible for the use of any of [Ryder's] motor vehicles with the consent, express or implied, of [Ryder]." (In 1983, the limits of this bond were raised to $15,000/$30,000 by the filing of a new bond by the same surety, in order to comply with the new limits of the applicable statutory requirements.) As a result, the director certified Ryder as a qualified self-insured. Ryder then undertook to obtain insurance from another insurance carrier to indemnify it, its directors, officers and salaried employees against any damages for which they might become responsible above the amount of $500,000. In effect then, Ryder had posted a bond for the $15,000/$30,000 limit required by the financial responsibility law. It was certified to act as a "self insured," but also had voluntarily obtained excess insurance above $500,000 in the event liability for damages was incurred by it, its directors, officers or salaried employees.

---

[1]This provision has been amended by *L.*1987, *c.* 428, § 1 (effective January 14, 1988) to provide the Commissioner of Insurance (instead of the Director) with enumerated and enlarged powers in this area.

Ryder argued that since it had posted the indemnity bond for the minimum amount of $15,000/$30,000 as required by the New Jersey financial responsibility law, the fact that it stood ready to indemnify itself or any of its enumerated employees for a higher amount, should not be construed as providing such additional coverage to one who becomes an additional insured, such as Harbor Bay in this case. Harbor Bay takes the position that even as an additional insured it is entitled to the same amount of coverage that Ryder undertook to extend to itself and its regular employees, as named insureds. Moreover, it points to several past incidents in which Ryder has paid in excess of the $15,000/$30,000 "policy limits" albeit not involving an additional insured under a "loading and unloading" situation.

The trial judge rendered a four-page letter decision in which he concluded that Ryder was liable to pay the entire $65,000 settlement to Rodermond on Harbor Bay's behalf. He found that Ryder's filing of the $15,000/$30,000 indemnity bond did not limit its liability. He reasoned further that since Ryder undertook to become "self-insured" up to $500,000, it was obligated to likewise provide such coverage limits to anyone who became an insured under the self-insurance concept, such as Harbor Bay. We do not agree.

In *American Nurses Ass'n. v. Passaic General Hosp.*, 192 *N.J.Super.* 486, 491, 471 *A.*2d 66 (App.Div.1984) mod. 98 *N.J.* 83, 484 *A.*2d 670 (1984) Judge Pressler pointed out that "self-insurance is not insurance at all" but the "retention of the risk of loss by the one upon whom it is directly imposed by law or contract." She went on to say also that the nature of such an undertaking subjects such a self-insurer "to any risk of loss to which he is subject and which is susceptible to insurance coverage but as to which he has not obtained such coverage."

In this case Ryder undertook to assume the risk of loss only for the mandatory minimum required by it of law which is currently $15,000/$30,000, the same coverage it would have

been required to purchase under the law if the Director had not allowed it to become a self-insured. *American Nurses Assn., supra,* at 492, 471 *A.*2d 66.

As we further pointed out in *General Accident Group of Ins. Co. v. Liberty Mutual Ins. Co.,* 191 *N.J.Super.* 530, 535–536, 468 *A.*2d 430 (App.Div.1983),

> Owners of motor vehicles rented without a driver for operation by others may be viewed in practical terms as a separate class from motor vehicle owners in general. To some extent, companies in the business of renting motor vehicles to others have less control over and knowledge of the persons using their motor vehicles. We see no reason why such owners cannot insure themselves against liability at higher limits than the limits provided for their lessees and persons using the vehicles with the permission of the lessees, so long as the minimum limits of the law are satisfied. If the minimum limits provided by law are inadequate, that is a matter that should be reconsidered by the Legislature.

Thus there is no statutory or policy prohibition against a self-insured providing financial responsibility only to the extent required by law and also obtaining additional insurance coverage in one form or another to cover only its own personnel. *Id.* at 536–37, 468 *A.*2d 430.

Whatever the public policy may be said to be in this State regarding mandatory motor vehicle insurance for the benefit of the public at large, the Legislature, in its wisdom, has seen fit to require protection of that interest by requiring insurance coverage only to the extent of $15,000/$30,000. Having exhibited its willingness and ability to do so, as further evidenced by the posting of the indemnity bond in that amount, Ryder persuaded the Director to certify it as a responsible self-insurer without imposing any special conditions. Lastly, we regard as unpersuasive evidence of any past performance by Ryder relating to excess payment in cases where it was potentially directly liable for the payment of any judgment.

Thus, we vacate the judgment entered in this matter and remand for entry of a judgment directing that Ryder be responsible to pay only $15,000 of the Rodermond settlement plus any interest for which it might be liable as an "insurer" on Harbor Bay's behalf.