NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4104
_____

WARREN HOSPITAL,

Appellant

v.

AMERICAN CASUALTY COMPANY OF READING;
CNA INSURANCE COMPANY

_____

On Appeal from the United States District Courtfor the
District of New Jersey
(D.C. Civ. No. 07-cv-00558)
District Judge: Jose L. Linares

Submitted Under Third Circuit L.A.R. 34.1(a)
on October 4, 2010

Before: SCIRICA, FUENTES, AND JORDAN, Circuit Judges.

(Opinion Filed: October 22, 2010)

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

Warren Hospital ("Warren" or "Hospital"), a non-profit hospital in Phillipsburg, New Jersey, brought this action for indemnification and equitable subrogation against Defendant American Casualty Company of Reading, Pennsylvania ("ACC").[1] Warren sought to recover the $425,0000, plus legal fees and costs, that it expended defending and settling an underlying medical malpractice action brought against Warren and Tracy Lee, a nurse at the Hospital. Lee had her own professional liability insurance with ACC (the "ACC Policy"). The ACC Policy's coverage is at issue in this case. The District Court granted ACC's motion for summary judgment and denied a motion from the Hospital. Plaintiff filed this timely appeal. We will affirm, largely for the reasons stated in the District Court's opinion.[2]

## I.

Because we write primarily for the parties, we set forth only the facts and history that are relevant to our conclusion. While providing care to a patient, Lee irrigated the patient's abdominal cavity with an excess amount of fluid, causing him to require a temporary colostomy. In a separate action, the patient sued the Hospital and Lee for negligence. The Hospital was sued under a theory of vicarious liability. The Hospital assumed its own

---

[1] According to ACC, there is no legal entity denominated as "CNA Insurance Co.," which Warren has also named as a Defendant in this action. We therefore will use the singular "Defendant" throughout this opinion.

[2] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

defense and that of Lee. Unable to find an expert to support its position, the Hospital settled with the patient for $425,000.

Warren Hospital layered its insurance coverage. The first $1 million per incident was a self-insured retention, which functioned similarly to a deductible. From $1 million to $5 million was covered by excess insurance from Lexington Insurance. Additional excess insurance, from One Beacon Insurance, covered claims above $5 million. Warren's policy with Lexington identified employees as "Insureds." (J.A. at 712.) Lee had her own malpractice insurance with Defendant "ACC", for up to $1 million per claim, for which she paid an annual premium of $89.29.

At issue in this case is the "Other Insurance and Risk Transfer Arrangements" provision of the ACC Policy, which states, in part:

> If there is any other insurance policy or risk transfer instrument, including but not limited to, self insured retentions, deductibles, or other alternative arrangements ("other insurance"), that applies to any amount payable under this Policy, such other insurance must pay first. It is the intent of this policy to apply only to the amounts covered under this Policy which exceed the available limit of all deductibles, limits of liability or self-insured amounts of the other insurance, whether primary, contributory, excess, contingent, or otherwise. This insurance will not contribute with any other insurance.

Lee contacted ACC regarding the patient's lawsuit and the Hospital's defense. ACC took the position that its insurance was excess to the Hospital's self-insured retention ("SIR"). The Hospital argued in response that the ACC Policy was primary insurance and that it expected to be indemnified by ACC for its defense of Lee. Unable to resolve this dispute, ACC and the Hospital entered a "stand-still" agreement, permitting the Hospital to

settle with the patient before trial, but preserving the Hospital's claims for indemnity and contribution.

The Hospital filed this action in state court and it was subsequently removed to federal court. The District Court found that, while under New Jersey law an employer could seek indemnity from an employee in a case like this, so as to reach the employee's insurance policy, the ACC Policy expressly included self-insured retentions as coverage that would precede its own payment. The Court rejected Plaintiff's argument that the Hospital's self-insured retention covered a different risk than the ACC Policy. The Hospital appealed, challenging the District Court's interpretation of the ACC Policy and its application of New Jersey law.

**II.**

We review *de novo* a District Court's decision granting summary judgment and apply the same standard of review as that applied by the District Court. *Twp. of Piscataway v. Duke Energy*, 488 F.3d 203, 208 (3d Cir. 2007); *Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the grant of summary judgment to Defendant, we review the evidence in the light most favorable to Warren Hospital, the non-moving party. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 592 (3d Cir. 2009).

Warren's primary contention on appeal is that the District Court focused on the reference to "self-insured retentions"in the ACC policy, but failed to consider the qualifying clause "that applies to any amount payable under this Policy." According to the Hospital, its own self-insured retention, for the first $1 million of a claim against it, does not apply to "any amount payable" under Lee's policy with ACC. Warren further emphasizes that its claims against ACC involve indemnity and equitable subrogation and not the patient's underlying malpractice claims. Accordingly, it argues that its own SIR cannot now apply to bar its claim against ACC, particularly as equitable subrogation allows it to step into Lee's shoes and receive the benefits of her coverage. Finally, the Hospital notes that ACC's advertising claimed the policy would cover a nurse for indemnity claims brought against the insured nurse by a self-insured employer who paid damages on the nurse's behalf. The District Court found this last argument inapplicable in this case, as Lee was not sued by the Hospital. We agree.

The District Court began its analysis by determining that, under New Jersey law, the doctrine of employee indemnity of an employee applies in this case. The Court then examined the ACC Policy and concluded that it did not provide coverage in this case in light of Warren's self-insured retention. Because we agree that the language of the ACC Policy clearly excludes coverage in this situation, we will decline to address the applicability of the doctrine of employee indemnity.

Under New Jersey law, an insurance policy is interpreted like any other contract and, absent any ambiguity, its terms "should 'be given their plain ordinary meaning.'" *Royal Ins. Co. of America v. KSI Trading Corp.*, 563 F.3d 68, 73 (3d Cir. 2009) (quoting *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (2001)). New Jersey courts endeavor "to interpret insurance contracts to accord with the objectively reasonable expectations of the insured." *Doto v. Russo*, 659 A.2d 1371, 1376-77 (N.J. 1995). Applying this standard, we must conclude that the ACC Policy, which expressly states that it will only pay after "any other . . . self-insured retentions . . . that appl[y] to any amount payable under this policy" expressly excludes coverage where, as here, Warren's own self-insured retention also applies to acts of Lee "within the scope of [her] employment." (J.A. at 720.)

We find *American Nurses Ass'n v. Passaic Gen. Hosp*, 484 A.2d 670, 674 (N.J. 1984), which Warren relies on in support of its position, inapposite. As the District Court noted, the language in the ACC Policy is quite distinguishable from that at issue in *American Nurses*. The ACC Policy, in an exclusion provision, expressly included "self insured retentions," unlike the relevant provision in *American Nurses*, which merely referenced "valid and collectible insurance." *Id*. Moreover, the provision of the policy in *American Nurses* began with the phrase "[i]f the Member has valid and collectible insurance for an occurrence protected by this Agreement." *Id*. Such language might be read to apply only to insurance for which the "Member" is a named insured or insurance that the Member has individually purchased. Here, in contrast, the relevant provision of the ACC Policy begins, "[i]f there is

-6-

any other insurance policy or risk transfer instrument," and hence includes with in its scope any insurance policy or risk transfer instrument that would apply to the underlying incident for which coverage is sought.

We similarly reject the Hospital's separate but related argument that its own insurance did not cover the "same risk" as the ACC Policy and that therefore, under the relevant case law, the excess insurance clause does not apply. In support of this position, Warren emphasizes that it is not required to reimburse or indemnify Lee for her liability due to her own negligence, and therefore contends that its SIR does not cover the "same risk." However, as we have noted, Warren's insurance policy with Lexington expressly included nurses as "Insureds" for acts committed in performance of their duties for Warren. As such, Warren did insure against the same risks covered by the ACC Policy, risks resulting from the negligent acts of Lee.

**III.**

We have considered the remainder of the Appellant's arguments and find them to be without merit. Accordingly, for the foregoing reasons we will affirm the District Court.