**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3150-14T3

ESMAY PARCHMENT,

    Plaintiff-Appellant,

v.

CITY OF EAST ORANGE,

    Defendant-Respondent,

and

INSERVCO INSURANCE SERVICES,
INC. and PENN NATIONAL
INSURANCE,

    Defendants.

_____

        Argued October 25, 2016 — Decided  July 17, 2017

        Before Judges Ostrer and Vernoia.

        On appeal from the Superior Court of New
        Jersey, Law Division, Essex County, Docket No.
        L-182-12.

        Michael J. Fioretti argued the cause for
        appellant.

        Littie E. Rau argued the cause for respondent
        (Ruderman, Horn & Esmerado, P.C., attorneys;
        Ms. Rau, of counsel and on the brief).

PER CURIAM

The primary issue in this appeal is whether principles of estoppel require a municipality to indemnify two of its police officers for judgments against them for violating a citizen's civil rights. The municipality abided by its obligations under its collective negotiations agreement and N.J.S.A. 40A:4-155 to provide a means of defense for the officers, but did not expressly disclaim liability for indemnification. We conclude no duty to indemnify arises. We therefore affirm the trial court's January 28, 2015 order granting summary judgment to defendant City of East Orange, and dismissing the declaratory judgment action of plaintiff Esmay Parchment, who obtained a judgment against the City's officers and sought indemnification of the officers from the City.

I.

The facts are largely undisputed. Two East Orange police officers used excessive force when they arrested plaintiff in her home. She filed a complaint against the two arresting officers, William Flood and Kim Johnson, as well as the City, asserting violations of her constitutional rights under 42 U.S.C.A. §§ 1983 and 1985.[1]

_____

[1] Plaintiff also named two other officers, who were later dismissed from the lawsuit.

A-3150-14T3

Pursuant to its collective negotiations agreement (Agreement)[2] with the East Orange Fraternal Order of Police (FOP), the City selected separate counsel to represent and defend each officer in the civil rights litigation. The relevant language in the Agreement that obligated the City to provide representation for the officers stated:

> Whenever an Employee is a defendant in any action or legal proceeding arising out of and directly related to the lawful exercise of police powers in furtherance of his/her official duties, the City, pursuant to N.J.S.A. 40A:14-155, shall provide such officer with the necessary means for the defense of such action or proceeding . . . .

The City did not participate in a municipal joint insurance fund, nor did it have applicable commercial insurance (although it had excess coverage that was not implicated). The City paid for the officers' representation out of its coffers and hired separate counsel for itself. However, it did not expressly advise the officers that it would disclaim liability for any judgment obtained against them.

Before trial, the City obtained a dismissal with prejudice, based on Monell v. Department of Social Services, 436 U.S. 658,

---

[2] The City entered separate agreements with the FOP for the periods of July 1, 1999 through June 30, 2006 and July 1, 2006 through June 30, 2010; however, the provision relating to legal representation was substantively unchanged.

98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  About a year later, a jury returned a verdict in plaintiff's favor, finding that Flood and Johnson "falsely arrest[ed] and/or imprison[ed]" her and used excessive force.  The jury awarded plaintiff $300,000 in compensatory damages.[3]  The court also assessed attorneys' fees and costs in the amount of $27,190.

After obtaining the judgment, plaintiff served the City with a demand for payment.  The City refused, stating it was not legally responsible for the officers' actions or the judgment against them.  The present litigation followed.  Plaintiff sought a declaratory judgment that the City was obligated to indemnify Flood and Johnson (Count Two).[4]  She also sought relief, as a third-party beneficiary, based on the City's alleged breach of the Agreement (Count Three).  Finally, she alleged the City violated its duty of good faith (Count Four).

---

[3] Although plaintiff had alleged in her complaint that the officers acted willfully, "outside the scope of [their] jurisdiction and without authorization of law," the jury was not asked to render an express verdict on this issue.

[4] In Count One, plaintiff sought declaratory relief against Inservco Insurance Services, Inc. and Penn National Insurance, which plaintiff alleged provided excess liability coverage for losses over $300,000.  However, Inservco was a third-party administrator, not an insurer; and the City had no pertinent insurance coverage for plaintiff's claim.  Count One was dismissed and is not the subject of this appeal.

Thereafter, Flood assigned to plaintiff any claim he had to indemnification from the City; in return, plaintiff promised not to take any further action to collect her judgment against him. Flood certified that the City had declined to indemnify him for the adverse judgment, "claiming that the acts were outside the scope of [his] employment and/or malicious, criminal or amounted to willful misconduct." Flood stated the City assigned him counsel in the case, but "never indicated that they were defending [him] . . . with a reservation of their rights to deny indemnification at a later date." Plaintiff did not obtain a similar assignment of rights from Johnson.

After a period of discovery, the City moved for summary judgment on all counts. Plaintiff cross-moved for summary judgment on Count Two. The parties did not dispute the facts we have set forth above. The City did dispute plaintiff's allegation that it offered $25,000 on the eve of trial to settle the case against the officers. The City also disputed plaintiff's allegation that the City made "[l]itigation decisions, such as settlement and terms" related to the officers' defense.

In a written opinion, Judge James S. Rothschild, Jr. granted the City's motion and denied plaintiff's cross-motion. The court rejected plaintiff's argument, based on Griggs v. Bertram, 88 N.J. 347 (1982), that the City was estopped from disclaiming liability

to indemnify the officers after it agreed to defend them. The judge held that Griggs did not apply to the City, which was a public entity, not an insurer. The City had not agreed to insure its employees, nor had it obtained insurance from an outside insurer or participated in a joint insurance fund. The court noted there was no proof the officers' attorneys disserved the officers' interests and favored the City.

Citing N.J.S.A. 40A:10-1, Judge Rothschild explained that the City was permitted, but not required to carry insurance for its employees; consequently, the City was not obligated to indemnify the officers. The court noted that the Agreement required the City to provide a defense, but was silent on a duty to indemnify or pay the costs of an adverse judgment. Likewise, N.J.S.A. 40A:14-155 obligated the City to pay defense costs, but imposed no duty to indemnify. The court noted this limitation was recognized in City Council of Elizabeth v. Fumero, 143 N.J. Super. 275, 284 (Law Div. 1976) and Hurley v. Atlantic City Police Department, 944 F. Supp. 371, 375 (D.N.J. 1996). The court thus dismissed plaintiff's declaratory judgment and breach of contract claims.

The court also found no basis to hold the City to the same duty of good faith standard imposed on insurers. The court highlighted that most of the alleged acts of bad faith consisted

A-3150-14T3

of the refusal to indemnify — which the court found the City was not obligated to do — and the alleged breach of the Agreement — which breach the court found did not exist. Therefore, the court concluded the City did not act in bad faith. This appeal followed.

## II.

We review the trial court's grant of summary judgment de novo, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

On appeal, plaintiff has jettisoned her breach of contract claim. That is not surprising. As Judge Rothschild cogently reviewed, the Agreement plainly imposes only a duty to provide a defense. The same is true of N.J.S.A. 40A:14-155.[5]

---

[5] Likewise, we note that the Tort Claims Act imposes no duty to indemnify; rather, it grants a municipality the option to indemnify its employees. See N.J.S.A. 59:10-4 ("Local public entities are hereby empowered to indemnify local public employees consistent with the provisions of this act."). The Act also imposes special conditions upon indemnification for punitive or exemplary awards. See id. (stating that a municipality may do so only if the governing body finds "the acts committed by the employee upon which the damages are based did not constitute actual fraud, actual malice, willful misconduct or an intentional wrong.").

Instead, plaintiff argues, as she did before the trial court, that the City was equitably estopped from denying responsibility for the judgment against the officers. Plaintiff also contends the City breached a duty to act in good faith, which compelled it to indemnify the officers. We reject both arguments.

A.

At the outset, we pause to address the difference between self-insurance and no insurance — inasmuch as plaintiff refers to the City as a self-insured entity and contends that, as such, it was obligated to indemnify the officers. As has been observed, the term "self-insurance" is ambiguous. 1A <u>Couch on Insurance</u> 3d § 10:1, at 10-3 (2010). In some respects, "so-called self-insurance is not insurance at all. It is the antithesis of insurance." <u>Am. Nurses Ass'n v. Passaic Gen. Hosp.</u>, 192 <u>N.J. Super.</u> 486, 491 (App. Div.), <u>aff'd in part and rev'd in part</u>, 98 <u>N.J.</u> 83 (1984).

> The essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer. The essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract.
>
> [<u>Ibid.</u>]

However, under some circumstances, "self-insurance" is more than "no insurance."

> In a sense, all risks not otherwise insured are "self-insured." However, many formal procedures exist whereby an entity can become recognized as a self-insurer. This is most commonly accomplished by filing a bond or furnishing another form of proof of the ability to pay amounts for which the self-insurer may become liable. To meet the conceptual definition of self-insurance, an entity would have to engage in the same sorts of underwriting procedures that insurance companies employ. These underwriting procedures include: (1) estimating likely losses during the period; (2) setting up a mechanism to create sufficient reserves to meet those losses as they occur; and (3) arranging for commercial insurance for losses that are beyond a preset amount.
>
> [Couch, supra, § 10:1, at 10-3 to -4.]

Under various legislative schemes, New Jersey has formally recognized qualified entities as self-insurers. For example, an owner or lessor of a fleet of twenty-five or more vehicles may comply with the compulsory automobile insurance law by obtaining a certificate of self-insurance, provided that the Commissioner of Insurance is satisfied with the owner's or lessor's financial standing. See N.J.S.A. 39:6-52. Under that particular scheme, "a certificate of self-insurance is the functional equivalent of a policy of insurance." Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., 119 N.J. 402, 411 (1990). Notably, public entities are

not required to obtain insurance or self-insure, but may "go bare." N.J. Mfrs. Ins. Co. v. Hardy, 178 N.J. 327, 336 (2004); Ross v. Transp. of N.J., 114 N.J. 134, 139 (1989).

Employers may also self-insure mandatory workers' compensation liability, see N.J.S.A. 34:15-77, by complying with its "stringent self-insurance requirements." Romanny v. Stanley Baldino Constr. Co., 142 N.J. 576, 580 (1995); see also In re Pathmark Stores, Inc., 367 N.J. Super. 50, 54-55 (App. Div. 2004). Furthermore, municipalities may join together to establish joint insurance funds. N.J.S.A. 40A:10-36. Although the fund is not an insurance company or an insurer, N.J.S.A. 40A:10-48, its "activities are subject to like regulation by the Commissioner of Insurance, and are designed to spread the self-insurance risks of municipal governments." Shapiro v. Middlesex Cty. Mun. Joint Ins. Fund, 307 N.J. Super. 453, 458 (App. Div.), certif. denied, 154 N.J. 607 (1998).

Here, the City is not a formal self-insurer in the foregoing sense. It has not assumed the responsibility, or demonstrated to regulators the capacity, to pay claims as do self-insurers under the compulsory automobile insurance and workers' compensation laws. The City has not agreed to indemnify its employees. Instead, it has decided to "go bare" — obtaining no commercial

insurance coverage — for its own potential liability, at least for amounts below which excess coverage is triggered.

We recognize an entity's exposure to losses below the point at which its insurer becomes liable under an excess policy is often denominated as a "self-insured retention." However, absent some other policy to cover those losses, it may be more accurate to say the entity is uninsured. In <u>American Nurses Association v. Passaic General Hospital</u>, 98 <u>N.J.</u> 83, 88-90 (1984), a hospital had a "self-insured sum" of $100,000, before its liability insurance, which covered its nurses, would be implicated. A nurse was separately covered by her own policy, which made "other insurance" primary. <u>Id.</u> at 86-87. Her insurer contended that the hospital's "self-insured sum" qualified as "other insurance." <u>Id.</u> at 88-89. The Court disagreed. Noting that the "tendency has been not to regard self-insurance as 'insurance,'" the Court concluded that nothing in the hospital's policy required it to pay the first $100,000 of a judgment against the nurse, nor was the hospital otherwise obligated to pay the first $100,000. <u>Id.</u> at 89. Furthermore, the hospital's decision to investigate the claim, which arose out of its insurance package, did not compel it to pay the first $100,000. <u>Id.</u> at 90.

Against this backdrop, we turn to plaintiff's principal argument: that like an insurer, the City as a "self-insured entity"

should be estopped from disclaiming liability for indemnifying the officers, since it provided the officers a defense without expressly reserving its right to disclaim liability. Plaintiff relies heavily on Griggs, supra. Her reliance is misplaced.

In Griggs, supra, an insured teenager injured another teen in a fight. 88 N.J. at 353. After the insured promptly notified the insurer, it immediately investigated by interviewing the insured, who admitted he intentionally hit the other teenager. Ibid. Although the policy excluded intentional torts, the insurer did not disclaim liability nor investigate further. Id. at 353-54. Seventeen months later, the injured teen sued the insured. Id. at 353. Upon receiving the complaint, the insurer disclaimed coverage, relying on the intentional tort exclusion. Id. at 354. The insured subsequently settled the case and sought indemnification from the insurer. Ibid.

The Court held the insurer was estopped from denying coverage, noting that it had previously found that an insurer's actual control of an investigation or defense triggers an insured's justifiable reliance that the insurer will be responsible for any judgment. Id. at 356 (citing Merchs. Indem. Corp. v. Eggleston, 37 N.J. 114, 127 (1962)). "The insured's justifiable reliance arises from the insurer's contractual right to control the defense under the policy." Ibid.

Notably, in Griggs, the insurer had "neither assumed the actual control of a case nor undertaken the preparation of any defense on behalf of the insured . . . ." Id. at 357. However, the policy authorized the insurer to control an investigation and defense. Id. at 359-60. It also required the insured to cooperate with the insurer in any lawsuit. Id. at 359. The insured was to "refrain from 'voluntarily . . . assum[ing] any obligation,'" and to "avoid independent action which will contravene any of the essential terms of the policy" or otherwise "interfere with the insurer's paramount right to control the case . . . ." Id. at 359-60.

In view of the insurer's authority and the insured's duty not to "act for itself under the policy," the insured justifiably relied upon the insurer's actions to expect coverage. Id. at 362. Absent a clear disclaimer or other conduct that clearly repudiated coverage, "the insured [was] justified in believing the insurer [was] vigorously exercising these rights in a manner which [would] fully protect the insured's interest under the policy." Ibid. Furthermore, prejudice arising from the reliance is presumed, since the "course cannot be rerun." Ibid. (quoting Eggleston, supra, 37 N.J. at 129 (internal quotation marks omitted)).

For several reasons, Griggs provides no grounds to estop the City from denying indemnification. First, an insured must

13                                                    A-3150-14T3

reasonably believe there is insurance at all, in order to justifiably rely on an insurer's actions and to expect coverage in a particular circumstance. However, the City is not an insurer or even a formal self-insurer, as described above. Unlike either, the City undertook no obligation to indemnify its officers for judgments against them. In fact, the officers' labor representatives did not secure an agreement to indemnify. Therefore, it would be unjustified for the officers to expect a duty to indemnify in their particular circumstances, when there was no reason to expect such a duty under any circumstance.

Second, like the hospital in <u>American Nurses Association</u>, <u>supra</u>, the fact that the City has some form of excess coverage does not make it an insurer of the amount within the "self-insured retention." Moreover, just as the hospital was not obligated to indemnify the nurse in <u>American Nurses Association</u>, <u>supra</u>, the City was not obliged to indemnify the officers here.

Finally, although the actual or potential control of the investigation or defense may arguably justify an insured's reliance and expectation of coverage, none was present here. The City provided the officers a means of a defense in accord with its contractual and statutory obligations. We reject plaintiff's unsupported allegation that the City controlled litigation decisions. <u>See</u> <u>Ridge at Back Brook, LLC v. Klenert</u>, 437 <u>N.J.</u>

14

Super. 90, 97-98 (App. Div. 2014) ("Bald assertions are not capable of either supporting or defeating summary judgment."). There is no evidence suggesting that the City controlled the defense or precluded the officers from presenting any defense that they, with the advice of their independent attorneys, wished to pursue. Nor were the officers obligated to defer to any "paramount" authority of the City to control the investigation and defense of the case against them. In short, the City took no actions that "preempt[ed] its [officers] from defending" themselves, nor did the City leave them "defenseless or seriously hampered in [their] ability to protect [themselves]," so as to give rise to estoppel. Griggs, supra, 88 N.J. at 356.

B.

We next turn to plaintiff's contention that the City violated its duty of good faith, which required it to indemnify its officers. We are unpersuaded. "[E]very insurance contract contains an implied covenant of good faith and fair dealing." Price v. N.J. Mfrs. Ins. Co., 182 N.J. 519, 526 (2005). An insurer owes a duty of good faith in processing an insured's claim, and an insured has a right of action for a bad faith failure to pay a claim where no debatable reason for denying payment exists. Pickett v. Lloyd's, 131 N.J. 457, 481 (1993). The standard also applies to "inattention to payment of a valid, uncontested claim."

Id. at 473. However, "[i]f the insured is unable to establish a right to the coverage claimed, the bad faith claim must be dismissed." Wacker-Ciocco v. Gov't Emps. Ins. Co., 439 N.J. Super. 603, 612 (App. Div. 2015). As discussed above, the City did not insure the officers against the judgment plaintiff obtained against them. Thus, it did not breach an insurer's duty of good faith.[6]

Nor did plaintiff establish that the City breached its implied duty of good faith and fair dealing found in its Agreement with the officers and FOP. "Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005). Pursuant to that duty, a party must "refrain from doing anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract." Id. at 225 (internal quotation marks and citation omitted).

---

[6] As we conclude the City was not a formal self-insurer, we need not address the extent to which one is bound by the same duty of good faith imposed on an insurer. See 14 Couch on Insurance 3d § 198.19, at 198-42 to -43 (2007) (noting a split among jurisdictions regarding whether self-insurers are held to the same standards of good faith and fair dealing toward insureds and third parties as traditional insurers).

A breach may occur if a defendant "acts with ill motives and without any legitimate purpose" to destroy a plaintiff's "reasonable expectations," or if a plaintiff "relies to its detriment on a defendant's intentional misleading assertions." Id. at 226. While the covenant "cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001).

Applying these principles, plaintiff has failed to establish a breach of the covenant implied in the Agreement. Plaintiff has not established that indemnification was necessary to fulfill the parties' expectations. Nor is there any showing that the City acted with ill motive or intentionally misled the officers. The City did not deprive the officers of the fruits of the Agreement, because no right to indemnification was provided, expressly or impliedly.

To the extent not addressed, plaintiff's remaining arguments lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                    A-3150-14T3